# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

_____

RONNY L. JACKSON, *et al.*

                              Plaintiffs,

           v.

JOSEPH R. BIDEN, JR *et al.*

                          Defendants.

_____

No. 2:22-cv-241

# DEFENDANTS' REPLY IN SUPPORT OF THEIR
# MOTION TO DISMISS THE COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ................................................................................................................................1

I.      PLAINTIFFS FAIL TO ALLEGE HARMS SUFFICIENT TO ESTABLISH
       ARTICLE III STANDING. ...........................................................................................1

       a.     Plaintiffs have not plausibly alleged that Defendants' ESF assistance to the
            West Bank and Gaza causes them an increased risk of harm when traveling
            to Israel in the future. ...........................................................................................2

       b.     Plaintiffs' Alleged Risks of Travel Cannot be Redressed by this Court. ........5

       c.     Plaintiffs' alleged injury based on the risk of future travel to Israel is both
            speculative and generalized and fails to establish standing. ..............................7

       d.     Plaintiffs' allegations of emotional distress are insufficient to establish
            standing. ...............................................................................................................9

II.     PLAINTIFFS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE
       GRANTED. ....................................................................................................................10

       a.     Plaintiffs fail to state a claim under the APA. ...................................................11

            i.      The TFA Commits to the Secretary the Discretion to Establish the
                  Criteria for ESF Assistance that "Directly Benefits" the PA. .........................11

            ii.     Plaintiffs bring an impermissible programmatic challenge to agency
                 policy. ...................................................................................................................13

            iii.    No plausible allegation of an APA violation. ...................................................14

       b.     Plaintiffs' *Ultra Vires* Claim Should be Dismissed. .........................................16

III.    THE COURT SHOULD IN ANY EVENT EXERCISE ITS DISCRETION TO
       DENY THE REQUESTED EQUITABLE RELIEF. ....................................................18

CONCLUSION ............................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Aerotrade, Inc. v. Agency for Int'l Dev., Dep't of State,*
    387 F. Supp. 974 (D.D.C. 1974)................................................................................4

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,*
    140 S. Ct. 2082 (2020)................................................................................10

*Alexander v. Sandoval,*
    532 U.S. 275 (2001)................................................................................10

*Alliance for Hippocratic Medicine v. U.S. Food & Drug Admin.,*
    No. 22-cv-223-Z, 2023 WL 2825871 (N.D. Tex. Apr. 7, 2023)................................6

*Baker v. Carr,*
    369 U.S. 186 (1962)................................................................................10

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.,*
    502 U.S. 32 (1991)................................................................................17, 18

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................16

*Bennett v. Spear,*
    520 U.S. 154 (1997)................................................................................2

*Bernstein v. Kerry,*
    962 F. Supp. 2d 122 (D.D.C. 2013)................................................................................4

*City of New York v. U.S. Dep't of Def.,*
    913 F.3d 423 (4th Cir. 2019)................................................................................14

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013)................................................................................8

*Corley v. United States,*
    556 U.S. 303 (2009)................................................................................15

*Department of Commerce v. New York,*
    139 S. Ct. 2551 (2019)................................................................................6

*Detroit Int'l Bridge Co. v. Gov't of Canada,*
    883 F.3d 895 (D.C. Cir. 2018)................................................................................13

*El-Shifa Pharm. Indus. Co. v. United States,*
    607 F.3d 836 (D.C. Cir. 2010)................................................................................12

*Fed. Express Corp. v. U.S. Dep't of Com.*,
    39 F.4th 756 (D.C. Cir. 2022) ..................................................................... 17, 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .................................................................................................5

*Geyen v. Marsh*,
    775 F.2d 1303 (5th Cir. 1985), *judgement vacated on other grounds sub nom.*, *Leal v. Becerra*, No. 21-10302, 2022 WL 2981427 (5th Cir. Jul. 27, 2022) ........................................16-17

*Great Plains Coop v. CFTC*,
    205 F.3d 353 (8th Cir. 2000) ..............................................................................18

*Greenberg v. Bush*,
    150 F. Supp. 2d 447 (E.D.N.Y. 2001) ................................................................19

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ................................................................................................13

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ...........................................................................................10

*Inclusive Comtys. Project, Inc. v. Dep't of Treasury*,
    946 F.3d 649 (5th Cir. 2019) ............................................................................ 2, 5

*Jaraba v. Blinken*,
    568 F. Supp. 3d 720 (W.D. Tex. 2021) ...............................................................8

*Leedom v. Kyne*,
    358 U.S. 184 (1958) ...........................................................................................18

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) .............................................................................................8

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ...........................................................................................13

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992) .......................................................................................... 4, 9

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ...........................................................................................13

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013) ...........................................................................................15

*Massachusetts v. Environmental Protection Agency*,
    549 U.S. 497 (2007) .......................................................................................... 8, 9

*Mountain States Legal Found. v. Glickman*,
  92 F.3d 1228 (D.C. Cir. 1996) .................................................................................9

*National Ass'n of Postal Supervisors v. USPS*,
  26 F.4th 960 (D.C. Cir. 2022) ...............................................................................17

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ........................................................................................... 13, 14

*Oklahoma v. Tellez*,
  No. 22-cv-00108-O, 2022 WL 17069132 (N.D. Tex. Nov. 17, 2022).............17, 18

*Puerto Rico v. United States*,
  490 F.3d 50 (1st Cir. 2007)....................................................................................17

*Sanchez-Espinoza v. Reagan*,
  770 F.2d 202 (D.C. Cir 1985) ..........................................................................18, 19

*Shrimpers & Fishermen of the RGV v. Tex. Comm'n on Env't Quality*,
  968 F.3d 419 (5th Cir. 2020) ....................................................................................8

*St. Paul Reinsurance Co. v. Greenberg*,
  134 F.3d 1250 (5th Cir. 1998).................................................................................2

*Tenn. Valley Auth. v. Hill*,
  437 U.S. 153 (1978) ...............................................................................................18

*Tex. Gen. Land Off. v. Biden*,
  —F. Supp. 3d—, Nos. 7:21-cv-00272 & 7:21-cv-00420, 2022 WL 3086333 (S.D. Tx. Aug. 3,
  2022), *reversed and remanded on other grounds*, —F. 4th—, No. 22-40526, 2023 WL 24044448 (5th Cir.
  June 16, 2023) .......................................................................................................17

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)...................................................................................... 3, 10

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018)...........................................................................................12

*United States v. Richardson*,
  418 U.S. 166 (1974) .................................................................................................8

*Vill. of Elk Grove Vill. v. Evans*,
  997 F.2d 328 (7th Cir. 1993) ...................................................................................9

*Welch v. Davis*,
  No. 20-cv-132-Z-BR, 2020 WL 4597079 (N.D. Tex. Aug. 11, 2020) .................11

**Statutes**

5 U.S.C. § 551(13) ...........................................................................................................13

22 U.S.C. § 2378c-1 ..................................................................................................*passim.*

Consolidated Appropriations Act, 2023,
    Pub. L. No. 117-328, 136 Stat. 4459 (2022), (FY2023 Appropriations Act),.............................13, 14

**Other Authorities**

Declaration of Principle on Interim Self-Government Arrangements (DOP) (Oct. 8, 1993),
    https://perma.cc/U5UK-HYY4 ....................................................................................16

Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip (Interim Agreement),
    (Sept. 28, 1995),
    https://perma.cc/T6VP-S9TF...................................................................................16

Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip (Interim Agreement),
    Annex III, Art. 40, (Sept. 28, 1995)............................................................................16

*West Bank and Gaza Aid: Should Funding Resume, Increased Oversight of Subawardee Compliance with*
    *USAID's Antiterrorism Policies and Procedures May Reduce Risks*, GAO (Mar. 29, 2021),
    https://perma.cc/3S6X-4NBQTFA .............................................................................7

## INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 24 (Pls.' Resp.), fails to establish Plaintiffs' standing or any plausible claim for relief under either count of their complaint. Plaintiffs misstate and misapply the law governing Article III standing, and quite wrongly assert that the Taylor Force Act (TFA) itself provides a basis for finding causation, redressability, and injury-in-fact here.  In particular, relying on inapposite environmental standing cases, Plaintiffs speculate that halting the challenged assistance would somehow reduce the risk of terrorist acts overseas by independent third parties. That conjecture is wholly inadequate to establish their Article III standing. Moreover, in describing the TFA, Plaintiffs downplay the most critical part of the Act at issue, namely that Congress itself drafted the TFA to grant to the Secretary of the State discretion to identify the criteria for assessing whether aid to the West Bank or Gaza "directly benefits" the Palestinian Authority (PA).  And Plaintiffs otherwise fail to plausibly allege that the Defendants have violated the TFA, given that the Economic Support Funds (ESF) at issue do not go to the PA but rather to entities that provide economic assistance to the people living in the West Bank and Gaza, consistent with Congress's mandate.  Plaintiffs thus do not state any viable APA claim, and their alternative *ultra vires* claim also fails as a matter of law.  Finally, notwithstanding these threshold defenses that support dismissal, the Court should in no event wade into the sensitive foreign policy issues raised by these claims, which concern whether and how the United States provides vital ESF assistance—a policy question for Congress and the Executive.  For these reasons, set forth below and in the motion to dismiss, the Court should dismiss the complaint.

## ARGUMENT

## I.   PLAINTIFFS FAIL TO ALLEGE HARMS SUFFICIENT TO ESTABLISH ARTICLE III STANDING.

Plaintiffs have failed to plausibly allege that they have standing to challenge ESF assistance to the West Bank and Gaza.  Though they have the burden of proof to establish jurisdiction, they not

1

only ignore many of Defendants' arguments advanced in the motion to dismiss, but also fail to properly apply established law on Article III standing.  Indeed, none of the authority Plaintiffs cite supports their standing here. Ultimately, accepting Plaintiffs' standing arguments could permit any plaintiff to obtain judicial intervention with respect to the policy choice by the political branches regarding U.S. foreign aid, not just with respect to the West Bank and Gaza but perhaps anywhere in the world.  That outcome would be clearly improper under Article III.

> **a.  Plaintiffs have not plausibly alleged that Defendants' ESF assistance to the West Bank and Gaza causes them an increased risk of harm when traveling to Israel in the future.**

Plaintiffs have not plausibly alleged that providing ESF assistance to the West Bank and Gaza is traceable to the first harm of which they complain: an increased risk of injury caused by terrorists if Plaintiffs travel to Israel in the future.  Finding Plaintiffs' alleged injury is sufficient to establish standing would require the Court to speculate about the future actions of the PA and terrorists overseas.  Defs.' Mem. in Supp. of Their Mot. to Dismiss the Compl., ECF No. 20-1 (Defs.' Br.), at 13-14.  Plaintiffs' response does not alter the clear conclusion that Defendants' ESF assistance is not traceable to, and will not plausibly cause, their alleged future injuries.  For this reason alone, Plaintiffs lack standing.

Though it is their burden to establish jurisdiction, *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998), Plaintiffs fail to explain how their multi-step theory establishes Article III standing under any test for causation, let alone under the prevailing test for third-party caused harm in the Fifth Circuit.  *See Inclusive Comtys. Project, Inc. v. Dep't of Treasury,* 946 F.3d 649, 655 (5th Cir. 2019) ("Causation [ ] isn't precluded where the defendant's actions produce a 'determinative or coercive effect upon the action of someone else,' resulting in injury." (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).  Plaintiffs assert that "[t]heir chain of causation is that of the Taylor Force Act itself: (1) Money is fungible; (2) Economic Support Funds spent in the West Bank and Gaza that directly benefit

the Palestinian Authority subsidize Palestinian terrorism; (3) pay-to-slay demonstrably, not speculatively, incentivizes terror attacks against Israel and American citizens." Pls.' Resp. at 11-12. But, on its face, this theory of causation manifestly fails. It hinges not only on the independent actions of third parties overseas, but also on sheer speculation that ESF assistance to yet another set of third parties in the West Bank and Gaza, people in need in need of economic and other assistance, would in some way impact those third parties to potentially increase the risk of injury to Plaintiffs on the chance they travel to Israel someday. Plaintiffs cannot sustain their standing at the pleading stage based on this speculative theory, which hinges on the attenuated actions of multiple foreign and independent third-party entities.

Furthermore, and contrary to Plaintiffs' suggestion, the TFA's terms do not support their standing to challenge ESF assistance. As a preliminary matter, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that [ ] defendant over that violation in federal court. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (noting also that "an injury in law is not an injury in fact"). "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III[.]" *Id.*[1]

Here, there is no indication that Congress sought to grant Plaintiffs a statutory right or cause of action to enforce the TFA. Rather, Plaintiffs' textual claim relies on Congress's finding that the PA's prisoner payment system incentivizes terrorism. But that finding does not establish a personal right, create a cause of action, or vest Article III standing in any person based on a purported increased risk of terrorism due to the alleged results of ESF aid to entities other than the PA. A Congressional

---

[1] In *Transunion*, the Court held that 1,835 class members whose credit reports were disseminated to third-party businesses with misleading information had standing to invoke a cause of action under the Fair Credit Reporting Act, whereas 6,332 class members whose misleading credit reports were not disseminated did not have standing. *See* 141 S. Ct. at 2207-2210.

3

finding on a policy matter simply cannot supply the kind of concrete, particularized injury claimed by persons who may travel to Israel at some future point, let alone support Plaintiffs' attenuated causation theory. Indeed, Congress suggested the opposite in enacting the TFA: it expressed support for "community-based programs in the West Bank and Gaza that provide for basic human needs, such as food, water, health, shelter, protection, education, and livelihoods, and that promote peace and development." 22 U.S.C. § 2378c-1 (Statutory Notes). In any event, blackletter law establishes that "there must be a causal connection between [a plaintiff's] injury and the conduct complained of" for jurisdiction in federal court. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs have not plausibly alleged—nor explained in their response—how the TFA creates a causal connection between *Defendants'* actions and *their* alleged injury, let alone any other basis for Article III standing.

Nor can Plaintiffs resuscitate their standing theory by relying on the fungibility of money. *See* Pls.' Resp. at 17-18. Plaintiffs cite no case for the broad proposition that providing foreign assistance establishes causation for hypothetical injuries stemming from the independent acts of third parties. To the contrary, as explained in Defendants' motion to dismiss, courts have uniformly declined to find causation when plaintiffs argued that U.S. foreign assistance incentivized a third party to harm them. *See, e.g., Bernstein v. Kerry,* 962 F. Supp. 2d 122 (D.D.C. 2013); *Aerotrade, Inc. v. Agency for Int'l Dev., Dep't of State*, 387 F. Supp. 974, 975 (D.D.C. 1974).[2] Indeed, the complaint itself alleges that a previous discontinuation of ESF to the West Bank and Gaza failed to cause the PA to change its prisoner

---

[2] The numerous foreign aid cases cited in the motion to dismiss where district courts concluded that plaintiffs did not have standing are directly on point. The TFA limits funding in a way not dissimilar to the funding limitations in the cited cases. For example, the *Bernstein* plaintiffs argued that U.S. funding violated the Department of State, Foreign Operations, and Related Programs Appropriations Act of 2012's limitation on funding used to support a Palestinian state. 962 F. Supp. 2d at 124. The *Aerotrade* plaintiffs argued that U.S. funding violated 22 U.S.C. §§ 2370(c) & 2370(e)(1) (restricting economic assistance to the government of Cuba). 387 F. Supp. 974, 975. Thus, far from setting the instant case apart, allegations of statutory violations are common in foreign aid cases where standing has been rejected, and Plaintiffs cannot distinguish the cited cases.

payments program.  Defs.' Br. at 14 (citing Compl. ¶¶ 10, 12, 33); *see also id.* at 4 ("The PA's Prisoner Payment System and Reductions in ESF").  Thus, far from a "settled" conclusion, Pls.' Resp. at 18, Plaintiffs can only speculate how the PA will respond to cuts in ESF, even assuming that money is "fungible."

Plaintiffs' causal theory also necessarily depends on correctly predicting the PA's future reaction to a hypothetical cut in ESF to the West Bank and Gaza.  Plaintiffs attempt to elide this point by reframing the allegations of their complaint: they argue that they need not plead that stopping ESF will "cause the Palestinian Authority to stop supporting terrorists," and they must only plead that stopping ESF "will reduce terrorism."  Pls.' Resp. at 13.  But the authority on which they rely for their "reduced risk" theory of standing is itself meritless (*see infra*) and fails to grapple with the fact that whether terrorism will increase or (more plausibly) be reduced by ESF assistance turns on the independent actions of persons and entities outside the United States, including the PA and those separate third parties that engage in acts of terrorism.  For these reasons, Plaintiffs have not plausibly alleged that Defendants' actions have caused any of their threatened injuries.

   b.  **Plaintiffs' Alleged Risks of Travel Cannot be Redressed by this Court.**

For similar reasons, Plaintiffs have not plausibly alleged their alleged risk of injury resulting from a possible terrorist attack during future travel could be redressed by this Court.  Plaintiffs again misapply Article III redressability doctrine.  "To satisfy redressability, a plaintiff must show that 'it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision,'" *Inclusive Communities Project*, 946 F.3d at 655 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).  Defendants previously explained why Plaintiffs cannot meet this constitutional threshold, *see* Defs.' Br. at 16-18, and Plaintiffs fail to show how their fear of future travel due to the actions of the PA or terrorists overseas could be redressed by enjoining ESF assistance to the West Bank and Gaza.  Indeed, numerous cases cited in the motion to dismiss illustrate

that courts have consistently rejected claims where plaintiffs contend that halting foreign aid will "likely" alter the behavior of a foreign authority. *Id.* at 17-18. Plaintiffs' response does nothing to rebut these arguments.

Plaintiffs principally rely on inapposite authority. For instance, Plaintiffs point to this Court's decision in *Alliance for Hippocratic Medicine v. U.S. Food & Drug Admin.*, No. 22-cv-223-Z, 2023 WL 2825871 (N.D. Tex. Apr. 7, 2023), a case challenging FDA's approval of mifepristone. There, this Court held that the plaintiffs' alleged injuries were likely redressable by an order invalidating the FDA's approval of the drug and that such an order would likely provide plaintiff doctors relief because fewer patients would experience "significant complications . . . requiring medical intervention and attention" allegedly caused by taking the medication. *Id.* at *8. The context here is plainly distinguishable from the circumstances at issue in *Alliance*. This case concerns whether enjoining U.S. aid to certain beneficiaries overseas would influence the behavior of other independent third parties overseas to increase the inherently unpredictable risk of terrorism. Indeed, in *Alliance*, this Court looked to *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019), for its redressability analysis. *Department of Commerce* involved a challenge to governmental action that directly regulated persons filling out census forms by requiring them to answer a citizenship question. New York based its standing on the allegation that the direct regulation of census respondents would result in fewer persons responding to the census, which would cause various concrete harms to the state, including a loss of representation and federal funding. *Id.* at 2565. In addressing redressability, the Supreme Court assessed whether the presence of the challenged citizenship question would have a "predictable" effect on third parties answering the census, *id.* at 2566, and concluded that the reaction of those persons was reasonably predictable and would cause the harms alleged by the state. *Id.*

Not so here. Plaintiffs can only speculate whether ceasing ESF assistance to one set of third parties (people who need economic assistance in the West Bank and Gaza) would have any impact on

another set of independent third parties (the PA), which in turn would impact yet another set of third parties (foreign terrorists), and thereby reduce the risk of terrorism in Israel and make it less likely that Plaintiffs will be harmed on a future visit.  If anything, Plaintiffs have it backwards:  it is more plausible, though also speculative, that reducing ESF assistance to the West Bank and Gaza would increase, not decrease, the risk of terrorism.  The United States provides ESF to the West Bank and Gaza in part to increase stability in the region.  As described in the GAO Report attached to the Complaint, "the US government has viewed economic and humanitarian assistance provided to the Palestinians as promoting the economic and political foreign policy interests of the United States by supporting Middle east peace negotiations and financial economic stabilization programs." *West Bank and Gaza Aid: Should Funding Resume, Increased Oversight of Subawardee Compliance with USAID's Antiterrorism Policies and Procedures May Reduce Risks*, GAO (Mar. 29, 2021), 1, https://perma.cc/3S6X-4NBQTFA. Congress has also clearly expressed its support for "community-based programs in the West Bank and Gaza that provide for basic human needs, such as food, water, health, shelter, protection, education, and livelihoods, and that promote peace and development."  22 U.S.C. § 2378c-1 (Statutory Notes). ESF aid provides precisely this form of financial assistance to the West Bank and Gaza.  *See* App. to Defs.' Br. at 1-8, ECF 20-2 (FY2020 and FY2021 Program Narratives, Exhibits A & B).  Plaintiffs' requested relief could well increase the risk of terrorism in the region and Plaintiffs have provided no basis to conclude otherwise.  In any event, speculation about potential future risks caused by the challenged ESF funding are insufficient to establish the Court's Article III jurisdiction.

### c.   Plaintiffs' alleged injury based on the risk of future travel to Israel is both speculative and generalized and fails to establish standing.

With respect to injury-in-fact, Plaintiffs alleged injury—an increased risk of terrorism when traveling to Israel in the future—is neither certainly imminent, nor concrete and particularized, as

required to allege injury-in-fact at the motion to dismiss stage.[3]  Even if Plaintiffs' some-day intentions of travel to Israel could suffice for injury-in-fact—and they do not—a non-particularized increased risk of harm is not sufficient to establish an injury-in-fact for Article III standing.  Defs.' Br. at 19-20. Plaintiffs' alleged risk of harm would apply to every traveler to Israel, and is neither concrete nor particularized.  Plaintiffs' response fails to engage with controlling case law.

An injury must be "certainly impending" to constitute an injury-in-fact.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  Plaintiffs' alleged injury does not meet this high bar, Defs.' Br. at 19-20.  Plaintiffs ignore that, in the Fifth Circuit, courts "do not recognize the concept of 'probabilistic standing' based on a non-particularized 'increased risk'—that is, an increased risk that equally affects the general public."  *Shrimpers & Fishermen of the RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 424 (5th Cir. 2020) (quoting *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014)).  Rather, Plaintiffs' alleged increased risk of terrorism is a quintessential generalized grievance that fails to satisfy the requirements of injury-in-fact under Article III.  The risk of terrorism is "plainly undifferentiated and common to all members of the public."  *See United States v. Richardson*, 418 U.S. 166, 177 (1974) (citations omitted) (concerning taxpayer standing).

Plaintiffs attempt to establish their standing by relying on inapposite environmental standing cases.  In *Massachusetts v. Environmental Protection Agency*, 549 U.S. 497, 525 (2007), the Court concluded that Massachusetts had standing because Congress had granted it a procedural right by statute to

---

[3] Plaintiffs' complaint defines their alleged harm as a "greater risk of physical harm or death."  Compl. ¶¶ 18-20.  Yet, Plaintiffs' now try to move the bar by describing their harm as "a reasonable fear of increased terrorism when they visit Israel," "deter[ring] them from visiting family, tourism, or religious pilgrimage."  Pls.' Resp. at 22.  While Plaintiffs cannot alter their claimed injury in their brief, *see Jaraba v. Blinken*, 568 F. Supp. 3d 720, 727 (W.D. Tex. 2021), their new formulation of a "reasonable fear of increased terrorism" and deterrence from travel, fails to establish standing for the same reasons. Indeed, the new formulation is arguably even weaker, as the Supreme Court has held that speculative fears that caused self-inflicted harms like deterred travel are insufficient to establish standing.  *See Clapper,* 568 U.S. at 418.

challenge EPA's denial of a rulemaking petition related to greenhouse gas emissions and because of the state's special solicitude related to its territorial integrity. The *Massachusetts* Court held that a federal agency's refusal to regulate emissions presented a risk of harm to Massachusetts that was both "actual" and "imminent," *id.* at 499 (citing *Lujan,* 504 U.S. at 560), and there was a "substantial likelihood that the judicial relief requested" would prompt that agency to take steps to reduce that risk, *id.* (citation omitted). But the Court did not hold, let alone suggest, that *any* alleged reduction in risk, in any context and however speculative, is sufficient to establish standing, as Plaintiffs appear to contend.

Plaintiffs' claim to standing is far more tenuous: that barring ESF assistance to one set of third parties in the West Bank and Gaza (people in need of economic assistance in the region) might incentivize another third party (the PA) to stop prisoner payments that might influence still other overseas third parties (foreign terrorists) and, thus, potentially reduce the risk of terrorism overseas should the Plaintiffs travel to Israel again someday. *Massachusetts* and the other environmental standing cases do not remotely support Plaintiffs' standing theory.[4]  Plaintiffs simply cannot satisfy Article III standing requirements based on such a speculative, attenuated claim of injury.

### d.  Plaintiffs' allegations of emotional distress are insufficient to establish standing.

Finally, Plaintiffs lack standing to challenge the provision of ESF to the West Bank and Gaza based on alleged mental distress stemming from Defendants' alleged violations of the TFA. The Fifth Circuit does not accept mental distress as a sufficient injury for standing purposes unless the action causing the emotional harm was directed at the plaintiff. Defs.' Br. at 19-20. Plaintiffs' response not

---

[4] Along similar lines, other environmental cases that Plaintiffs cite involved government conduct that directly affected the location inhabited by plaintiffs, causing them direct, tangible harm.  *See, e.g., Mountain States Legal Found. v. Glickman,* 92 F.3d 1228, 1234 (D.C. Cir. 1996) (reviewing plaintiffs' claim that a National Forest Service regulation would increase the risk of forest fires and cause direct harm to plaintiffs who attested they recreated in the location); *Vill. of Elk Grove Vill. v. Evans,* 997 F.2d 328, 329 (7th Cir. 1993) (reviewing a claim that building a radio tower would directly increase the town's risk of flooding).

only ignores this authority, but also provides no justification for why the Court may consider emotional distress as a harm at all.

Without analysis, Plaintiffs cite *Baker v. Carr*, 369 U.S. 186 (1962), to apparently argue that this case is more than a policy dispute. Pls.' Resp. at 17. But *Baker* supports the opposite conclusion. There, the Supreme Court held that citizens of certain counties in Tennessee had standing to sue to vindicate their personal right to vote when their vote was diluted by redistricting practices allegedly unconstitutional under the Fourteenth Amendment. *Baker*, 369 U.S. at 207-08. Here, on the other hand, Plaintiffs fail to identify any right Defendants have violated, let alone a right vested in them personally like the right to vote in *Baker*. Indeed, the TFA regulates "the agenc[y] that will do the regulating," and does not to confer a right on particular persons. *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (confirming that in such situations there is "no implication of an intent to confer rights on a particular class of persons" (citation omitted)). The "United States supplies more foreign aid than any other nation in the world[,] . . . Congress sometimes imposes conditions on [that] aid," *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2087 (2020), and Plaintiffs have not alleged any facts to distinguish their "'personal stake' in defending [those conditions] . . . from the general interest of every citizen[.]" *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013). Strongly held positions on policy matters do not permit Plaintiffs to invoke the jurisdiction of the Court. *Cf. TransUnion*, 141 S.Ct. at 2207 ("Private plaintiffs are not accountable to the people and are not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law.").

For all the foregoing reasons, the Court should dismiss the complaint for lack of jurisdiction.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

The Court should also dismiss the complaint for failure to state a claim. Plaintiffs' response does not alter the conclusion that their claims are barred as a matter of law under the APA and *ultra vires* theories.

10

### a.  Plaintiffs fail to state a claim under the APA.

#### i.  The TFA Commits to the Secretary the Discretion to Establish the Criteria for ESF Assistance that "Directly Benefits" the PA.

While the TFA regulates ESF assistance that "directly benefits" the PA, it directs the Secretary to define what constitutes assistance that "directly benefits" the PA under the statute.  Thus, to the extent Plaintiffs seek to challenge the criteria the Secretary uses or claim the Secretary has violated the TFA in establishing those criteria, that aspect of their APA claim is not reviewable.

Plaintiffs' assertion that Defendants have not "analyze[d] or engage[d] with the controlling text," Pl. Resp. at 17, is wrong.  Defendants have explained that Congress delegated the Secretary of State the sole authority to establish the "list of the criteria that the Secretary uses to determine whether assistance for the West Bank and Gaza is assistance that directly benefits the Palestinian Authority" and submit that list to the "appropriate congressional committees."  22 U.S.C. § 2378c-1(f)(1) & (Statutory Notes) (defining "appropriate congressional committees" as the Appropriations Committees of the House of Representatives and Senate and the Foreign Affairs Committee of the House and the Foreign Relations Committee of the Senate).  On its face, the TFA expressly leaves it to the Secretary to identify the criteria for what "directly benefits" means, *see* Defs.' Br. at 23-25, and requires the Secretary to submit that information to the committees in Congress with jurisdiction over appropriations and oversight.

"It is well established that, when the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms."  *Welch v. Davis*, No. 20-cv-132-Z-BR, 2020 WL 4597079, at *2 (N.D. Tex. Aug. 11, 2020).  Plaintiffs nonetheless seek to substitute their own definition for "directly benefit" to challenge the Secretary's application of the TFA.  They posit that Congress forbids all ESF assistance on matters purportedly within the PA's "governance obligations, including social services, education and culture, public health, water supply, infrastructure, economic development, and disaster preparedness."  Pls.'

11

Resp. at 23 (citing 22 U.S.C. § 2378c-1(a)). That section of the Act says nothing of the kind. Disregarding the Secretary's discretion to identify the criteria for what ESF directly benefits the PA, Plaintiffs contend that the *only* assistance that can be provided to the West Bank and Gaza is that described in three specific exceptions in the TFA: (A) East Jerusalem Hospital Network; (B) wastewater projects not exceeding $5,000,000 in any one fiscal year; and (C) assistance for any other program, project, or activity that provides vaccinations to children not exceeding $500,000 in any one fiscal year. *See* 22 U.S.C. § 2378c-1(b)(1). But the statute does not *limit* ESF assistance to only those categories—it simply states the TFA's restrictions on funds that directly benefit the PA "shall not apply" to those categories. *Id.* The statute otherwise leaves to the Secretary to identify the criteria as to what ESF assistance does not directly benefit the PA. Thus, contrary to Plaintiffs' suggestion otherwise, Congress did not define aid that "directly benefits" nor judge that the phrase "directly benefits" was "clear enough." *See* Pls.' Resp. at 22. Instead, Congress expressly directed the Secretary to define "directly benefits" and did not cabin his discretion in doing so. *See* 22 U.S.C. § 2378c-1(f)(1); Defs.' Br. at 23-25. Plaintiffs have identified no other statutory provision in the TFA that contradicts this conclusion, nor can they.

Moreover, instead of granting Plaintiffs a judicially enforceable right, Congress indicated that it wished to retain a political check on the Secretary's actions by directing him to submit the criteria for "directly benefit" to the "appropriate congressional committees." 22 U.S.C. § 2378c-1(f)(1). This was a "strategic choice[ ]" intended to confine decisions about the "nation's foreign affairs," *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 843 (D.C. Cir. 2010), to those able to "respond to changing world conditions." *Trump v. Hawaii*, 138 S. Ct. 2392, 2420 (2018) (citation omitted). Thus, the text itself indicates that Congress intended for oversight of criteria to be left to the appropriate Congressional committees.

Overall, "because of the changeable and explosive nature of contemporary international relations, Congress must of necessity paint with a brush broader [in foreign affairs] than that it customarily wields in domestic areas[.]" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010) (cleaned up); *see also Detroit Int'l Bridge Co. v. Gov't of Canada,* 883 F.3d 895, 902 (D.C. Cir. 2018). Consequently, U.S. foreign aid decisions fall into a "categor[y] of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (citation omitted). Under long-established APA principles, there is no law to apply in reviewing the Secretary's action to establish criteria for whether ESF assistance directly benefits the PA, since the TFA left a determination of those criteria to the Secretary.[5]

### ii.  Plaintiffs bring an impermissible programmatic challenge to agency policy.

Furthermore, Plaintiffs' broad challenge to all ESF provided to the West Bank and Gaza fails to identify a discrete agency action under the APA, and therefore must fail. *See* 5 U.S.C. § 551(13) (defining "agency action"); Defs.' Br. at 25-26. Plaintiffs' response only confirms these arguments.

Plaintiffs' challenge to ESF assistance, asserting "[g]eneral deficiencies in compliance" with the TFA, fails under the APA as a matter of law. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62-66 (2004). Plaintiffs cannot avoid this conclusion by arguing that they only object to assistance that violates the law, Pls.' Resp. at 23-24, because that is the very definition of an inappropriate undifferentiated challenge. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990). That they further challenge aid provided to "all non-governmental organizations" operating in the West Bank and Gaza,

---

[5] To be clear, Defendants do not claim the discretion to violate the TFA by, for example, distributing ESF funds *directly* to the Palestinian Authority. *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, § 7040(a), 136 Stat. 4459 (2022), (FY2023 Appropriations Act) (restricting the use of ESF for direct cash assistance to the PA). But the TFA grants the Secretary discretion to determine the criteria for "directly benefit"—subject to Congressional oversight in appropriations process. And, as separately explained below, Plaintiffs make no plausible claim that ESF funds are "directly benefitting" the PA in violation of the TFA.

13

Pls.' Resp. at 25, only emphasizes the broad and generalized nature of their claim.  Put differently, Plaintiffs attack all ESF funding provided to the West Bank and Gaza.  This challenge cannot be squared with the millions of dollars that Congress expressly allocates for the West bank and Gaza each year, much less the APA's ban on claims that do not challenge "discrete agency action[s]."  *Norton*, 542 U.S. at 64 (citing 5 U.SC. § 706(1)); *see also, e.g.* FY2023 Appropriations Act (Joint Explanatory Statement accompanying the FY2023 Appropriations Act) (allocating $225 million in ESF to the West Bank and Gaza for FY2023); *c.f. City of New York v. U.S. Dep't of Def.,* 913 F.3d 423, 435 (4th Cir. 2019) (discussing possible downstream effects of permitting programmatic challenges).  For this reason as well, Plaintiffs' APA claim fails.

### iii.  No plausible allegation of an APA violation

In any case, Plaintiffs fail to plausibly allege that Defendants are violating the TFA by providing ESF assistance to the West Bank and Gaza.  As an initial matter, Congress mandated that ESF funds be provided to the West Bank and Gaza, *e.g.* FY2023 Appropriations Act, and for purposes of compliance with the TFA, left to the Secretary to determine the criteria as to what directly benefits the PA, subject to congressional oversight.  As noted, there is no plausible claim that the Secretary violated the TFA by establishing those criteria, as Congress directed, or by submitting them to the appropriate committees.

Plaintiffs also have not plausibly alleged that ESF funds are being distributed in violation of the TFA by "directly benefit[ting]" the PA.  Nor could they.  The Program Narratives cited in the Complaint, which describe the ESF assistance, specifically acknowledge compliance with the limits imposed by the TFA and make clear that ESF funds have not flowed to the PA, but rather to non-government entities for activities such as clean water projects and sanitation, programs to assist Palestinian youth, programs for business and job creation, programs to assist persons seeking employment, and for disaster readiness initiatives.  Defs.' Br. at 27-28.  Plaintiffs suggest no limiting

principle to their challenge, which taken at face value contends that all ESF to non-PA entities in the West Bank and Gaza would violate the TFA. But the TFA does not restrict all ESF assistance to the West Bank and Gaza. Plaintiffs' reading of the statute would both reduce the Appropriations Acts' mandate of ESF assistance to a dead letter and render the statutory term "directly" in the TFA a nullity. *Corley v. United States*, 556 U.S. 303, 314 (2009) (observing that the rule against surplusage is "one of the most basic interpretive canons"). Notably, while Plaintiffs cite legislative history deploring the PA's prisoner payment system, Congress also made clear its support for "community-based programs in the West Bank and Gaza that provide for basic human needs, such as food, water, health, shelter, protection, education, and livelihoods, and that promote peace and development." 22 U.S.C. § 2378c-1 (notes); *see also* Defs.' Br. at 6 (Congressional statements in support of ESF assistance to the West Bank and Gaza). Indeed, "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (citation omitted), and here, Plaintiffs' interpretation would render Congress's support for these programs, and the millions of dollars it appropriated to fund them, exactly that.

Thus, Plaintiffs' argument that assistance for "civil society," "social services," "public health" and the like all "facially" violate the TFA is entirely unfounded. Pls.' Resp. at 24. At most, what Plaintiffs suggest is that ESF assistance might "indirectly" benefit the PA insofar as it improves the lives, infrastructure, and conditions of the people of the West Bank and Gaza. But that is not what the TFA seeks to prohibit. Nor does the Act prohibit all aid provided to NGOs operating within the West Bank and Gaza, despite Plaintiffs' allegation that the PA has taken control of NGOs operating within its jurisdiction. The Program Narratives identify numerous aid recipients, including Architecture, Engineering, Construction, Operations, and Management (AECOM) Technical Services, Inc., Catholic Relief Services, Global Communities, Mercy Corps, and DAI Global, LLC. FY2020 Program Narrative & FY2021 Program Narrative, Exs. A & B, Defs.' Mot. to Dismiss, ECF

No. 20-2.  These are well-known international aid organizations with presences in many regions beyond the West Bank and Gaza, and Plaintiffs have not plausibly alleged that the PA controls any of them.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that "conceivable" claims are not the same as "plausible," and the former do not suffice to state a claim under Rule 12).  Moreover, even if the PA sought to assert control over non-government international organizations that provide assistance on the West Bank and in Gaza, the question would remain whether ESF funds provided to those entities by the Defendants to assist the people of the West Bank and Gaza would "directly" benefit the PA.  Under the TFA, the criteria for making that determination were left to the Secretary, and Plaintiffs do not plausibly allege that any particular funding violates the TFA.

Plaintiffs fail to state a claim under the APA.[6]

**B. Plaintiffs' *Ultra Vires* Claim Should be Dismissed.**

Defendants explained in their motion to dismiss that Plaintiffs' *ultra vires* claim is an impermissible extension of their deficient APA claim, and that Plaintiffs cannot salvage their claim with an appeal to the *ultra vires* doctrine.  *See* Defs.' Br. at 31 (discussing *Geyen v. Marsh*, 775 F.2d 1303,

---

[6] Plaintiffs appear to cite the Declaration of Principle on Interim Self-Government Arrangements (DOP) (Oct. 8, 1993), https://perma.cc/U5UK-HYY4, the first of agreements known as the Oslo Accords, to argue that any assistance to the West Bank is *per se* assistance to the PA.  Pls.' Resp. at 3, 23, 25.  However, this is not supported by the provisions of the Accords misquoted by Plaintiffs. Indeed, the Oslo Accords establish a complex and phased framework allocating Israeli and PA authority in myriad functions and geographic areas in the West Bank and Gaza.  Of note, Plaintiffs' citation does not cover the scope of authority that they claim, including water supply and infrastructure.  Moreover, the DOP itself, at Annex III, specifically explains that there would be joint Israeli-Palestinian cooperation on water management in the West Bank and Gaza.   And finally, the Interim Agreement referenced in the citations offered by Plaintiffs, the second of the Oslo Accords, specifically divides authority in the West Bank and Gaza between Israel and the PA, maintaining Israeli, not PA, jurisdiction over portions of the West Bank with a phased plan for transfers of authority.  Israeli-Palestinian Interim Agreement on the West Bank and the Gaza Strip (Interim Agreement), Article XI.3.c (Sept. 28, 1995), https://perma.cc/T6VP-S9TF; Interim Agreement, Annex III, Art. 40.  As a result, the Oslo Accords do not support Plaintiffs' claim, but further undermine their assertion that ESF assistance in the West Bank and Gaza directly benefits the PA by illustrating the complicated and shifting nature of PA, Israeli, and mutually shared responsibilities.

1307 (5th Cir. 1985)), *judgement vacated on other grounds sub nom.*, *Leal v. Becerra*, No. 21-10302, 2022 WL 2981427 (5th Cir. Jul. 27, 2022); *Tex. Gen. Land Off. v. Biden*, —F. Supp. 3d—, Nos. 7:21-cv-00272 & 7:21-cv-00420, 2022 WL 3086333 *16 (S.D. Tx. Aug. 3, 2022)), *reversed and remanded on other grounds*, --- F. 4th ----, No. 22-40526, 2023 WL 24044448 (5th Cir. June 16, 2023)); *see also Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43-44 (1991); *Puerto Rico v. United States*, 490 F.3d 50, 59-60 (1st Cir. 2007) (holding that nonstatutory review was inappropriate where the APA provided plaintiff a cause of action).

The authority on which Plaintiffs rely in their response confirms that *ultra vires* review is unavailable here. Specifically, Plaintiffs cite several cases where the court recognized *ultra vires* review in circumstances where an APA claim was expressly precluded by statute. *See* Pls Resp. at 26 (citing, *inter alia, Oklahoma v. Tellez*, No. 22-cv-00108-O, 2022 WL 17069132, at *3 (N.D. Tex. Nov. 17, 2022) (citations omitted); *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 763-64 (D.C. Cir. 2022); *National Ass'n of Postal Supervisors v. USPS*, 26 F.4th 960, 970 (D.C. Cir. 2022)). In each of those cases, the court faced a situation where, absent judicial review under the APA, *ultra vires* review for an alleged statutory violation was the only available remedy. But in the very authority cited by Plaintiffs, the courts made clear that non-statutory review is available where "there is no alternative procedure for review of the statutory claim[.]" *Fed Express Corp.* 39 F.4th at 763 (citiation omitted); *Tellez*, 2022 WL 17069132 *3 (citation omitted). That obviously is not the case here: Plaintiffs have raised an APA claim, and the mere fact that claim is subject to viable APA defenses does not permit the Plaintiffs to tack-on and obtain review under an *ultra vires* theory.

And even if Plaintiffs' statutory *ultra vires* claim were not barred based on the availability of an APA cause of action, Plaintiffs have alleged no facts to support the "extreme" standard of review for *ultra vires* actions. *Tellez*, 2022 WL 17069132, at *2 (citation omitted). For instance, they cannot allege that they have been "deprived . . . of a 'right' assured to them by Congress," and now lack means of

17

"vindicating" that right.  Defs.' Br. at 32 (first quoting *Leedom v. Kyne*, 358 U.S. 184, 189 (1958); then

*MCorp Fin., Inc.*, 502 U.S. at 43-44), particularly where the TFA grants them no statutory right.  Nor,

for all of the reasons above and in the motion to dismiss, have they alleged a "clear departure by the

[agency] from its statutory mandate" or that the action undertaken is "blatantly lawless." *Fed. Express*

*Corp.*, 39 F.4th at 764 (alteration in original) (citation omitted); *see Tellez*, 2022 WL 17686579, at *3

(dismissing an *ultra vires* claim for failing to show that the BOP director "plainly act[ed] in excess of

[his] delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory."

(first alteration in original) (citation omitted)).  In sum and substance, Plaintiffs' *ultra vires* claim is an

"impermissible attempt to make an 'end run' around the [APA] statutory scheme," *Great Plains Coop v.*

*CFTC*, 205 F.3d 353, 355 (8th Cir. 2000), and therefore the Court should dismiss the claim.

### III.   THE COURT SHOULD IN ANY EVENT EXERCISE ITS DISCRETION TO DENY THE REQUESTED EQUITABLE RELIEF.

Even if the Court is not inclined to dismiss the complaint on the grounds set forth above, the

Court should exercise its discretion to deny Plaintiffs equitable relief. *Sanchez-Espinoza v. Reagan*, 770

F.2d 202 (D.C. Cir 1985).  *See* Defs.' Br. at 32-33.  Plaintiffs' attempt to distinguish this doctrine fails.

In *Sanchez-Espinoza*, then-Circuit Judge Scalia exercised the court's inherent discretion to deny

equitable relief when an injunction would intrude on sensitive matters of foreign affairs.  *Sanchez-*

*Espinoza*, 770 F.2d at 207-08.  Whether to invoke that discretion turns on weighing various "equities

and hardships," *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 193 (1978) (citation omitted), and Judge Scalia

focused predominantly on the requested injunction's potential impact on a high-level foreign affairs

decision that involved the "conduct of our diplomatic relations."  *Sanchez-Espinoza*, 770 F.2d at 208.

He also noted that the need to deny a discretionary injunction increases where a Plaintiff invokes a

generally applicable statute as "authority" for the injunction.  *Id.*

Plaintiffs appear to contend that *Sanchez-Espinoza* does not apply because, in contrast to the

claims raised in that case, the statute at issue here, the TFA is not "generally applicable" but "controls

18

directly and in detail."  Pls.' Resp. at 27.  That contention is plainly wrong as a matter of law.  Judge Scalia found that equitable discretion foreclosed judicial review in the face of five sets of claims, including under the APA, Alien Tort Statute (ATS), and several other statutes.  But here, in stark contrast to the APA and ATS claims at issue in *Sanchez-Espinoza*, the TFA does not provide a cause of action *at all* on which any claim can be based (which is why Plaintiffs here must attempt to rely on the APA and a non-statutory *ultra vires* cause of action).  Plaintiffs stand in the same place as those in *Sanchez-Espinoza* by bringing an APA claim to seek compliance with a statute.

In addition, Judge Scalia found that three other statutes on which the plaintiffs in *Sanchez-Espinoza* sought to base their claims did not supply a damages remedy on which relief could be sought. *See* 770 F.2d at 209.  Thus, as the court observed, the only conceivable cause of action to enforce those statutes was a suit for non-monetary relief under the APA—again, the same claim here.  And as to the APA claim, the court explained that nonmonetary relief was discretionary and "would not . . . be provided" in a case implicating sensitive foreign relations issues.  *Id.* at 210.  Plaintiffs' effort to distinguish *Sanchez-Espinoza* as a matter of law clearly fails.

In addition, there is little doubt that the extraordinary relief Plaintiffs seek—halting ESF assistance to the West Bank and Gaza—would raise extraordinarily sensitive matters of U.S. policy with foreign entities and governments and could have significant repercussions on stability in that region.  *See* Defs.' Br. at 33, 3-9; *Greenberg v. Bush*, 150 F. Supp. 2d 447, 450 (E.D.N.Y. 2001) (rejecting plaintiffs' claim for equitable relief under *Sanchez-Espinoza* after they claimed that the United States violated the policy of "supporting the creation of a homeland for the Jewish people").  Accordingly, while the Government's prior threshold defenses should be sufficient to dismiss the complaint, the Court in any event should exercise its discretion to deny Plaintiffs the equitable relief they seek and dismiss the case.

## <u>CONCLUSION</u>

       The Court should dismiss this case for the reasons stated above and in Defendants' motion.

Dated: June 27, 2023             Respectfully submitted,

                                      BRIAN M. BOYNTON
                                      *Principal Deputy Assistant Attorney General*

                                      ALEXANDER K. HAAS
                                      *Director*

                                      ANTHONY J. COPPOLINO
                                      *Deputy Director*

                                      */s/ Samuel Rebo*
                                      SAMUEL REBO (DC Bar # 1780665)
                                      Trial Attorney
                                      United States Department of Justice
                                      Civil Division, Federal Programs Branch
                                      1100 L Street NW
                                      Washington, DC 20005
                                      (202) 514-6582
                                      Samuel.a.rebo@usdoj.gov
                                      *Counsel for Defendants*

20