**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

---

|  |  |  |
|---|---|---|
| RONNY L. JACKSON, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 2:22-cv-00241-Z |
| | ) | |
| JOSEPH R. BIDEN, JR *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.      Discovery Regarding Traceability Is Inappropriate........................................................ 3

        A.      Defendants' Traceability Arguments Are Facial and Therefore Not Amenable to
                Jurisdictional Discovery................................................................................... 3

        B.      The Draft OFAC License Request Regarding Hamas Does Not Support
                Jurisdictional Discovery Because This Lawsuit Concerns a Unique Assistance
                Restriction Regarding the Palestinian Authority. .................................................. 6

II.     Resolution of Defendants' Traceability Argument Is Not Necessary to Resolve
        Defendants' Motion to Dismiss. ........................................................................... 9

III.    Besides Being Unnecessary, Plaintiffs' Requested Discovery Is Vague and Unjustified in
        Its Breadth. ...................................................................................................... 11

CONCLUSION.................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Abulhawa v. U.S. Dep't of the Treasury*,
239 F. Supp. 3d 24 (D.D.C. 2017) ........................................................................ 4

*AccuCredit Associates, LLC v. Diversified Global Systems, LLC*,
2019 WL 11276332 (D.N.J. 2019) ........................................................................ 4

*Aerotrade, Inc. v. Agency for Int'l Dev., Dep't of State*,
387 F. Supp. 974 (D.D.C. 1974) ........................................................................... 4

*Bennett v. Spear*,
520 U.S. 154 (1997) .............................................................................................. 3

*Bernstein v. Kerry*,
962 F. Supp. 2d 122 (D.D.C. 2013) ...................................................................... 4

*Daves v. Dallas County, Texas*,
64 F.4th 616 (5th Cir. 2023) ............................................................................... 10

*Davila v. United States*,
2011 WL 13138088 (W.D. Tx. 2011) .................................................................... 4

*Ex parte McCardle*,
7 Wall. 506, 19 L. Ed. 264 (1868) ...................................................................... 10

*Freeman v. United States*,
556 F.3d 326 (5th Cir. 2009) ................................................................................ 6

*Getagadget, L.L.C. v. Jet Creations, Inc.*,
No. 19-51019, 2022 WL 964204 (5th Cir. Mar. 30, 2022) ................................... 5

*GTE New Media Services, Inc. v. BellSouth Corp.*,
199 F.3d 1343 (D.C. Cir. 2000) ............................................................................ 5

*Hunter v. Branch Banking and Trust Co.*,
2012 WL 5845426 (N.D. Tx. 2012) ...................................................................... 4

*In re MPF Holdings US LLC*,
701 F.3d 449 (5th Cir. 2012) ................................................................................ 3

*Indigenous People of Biafra v. Blinken*,
639 F. Supp. 3d 79 (D.D.C. 2022) ........................................................................ 4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .............................................................................................. 3

*Murphy v. Amarillo National Bank*,
2021 WL 40779 (N.D. Tx. 2021) .......................................................................... 3

*RapidDeploy, Inc. v. RapidSOS, Inc., No. 1:22-CV-00612-LY*,
    2022 WL 3045649 (W.D. Tex. Aug. 1, 2022), *report and recommendation adopted*, No.
    1:22-CV-612-LY, 2022 WL 17814234 (W.D. Tex. Aug. 26, 2022) ...................................... 5

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) ................................................................................................ 10

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) .................................................................................................. 10

*Wesberry v. United States*,
    205 F. Supp. 3d 120 (D.D.C. 2016) ........................................................................... 5

**Statutes**

22 U.S.C. § 2378c-1 ...................................................................................................... 9

**Regulations**

72 Fed. Reg. 61,517 (Oct. 31, 2007) ............................................................................. 7

**Other Authorities**

CRS Report, IF10644,
    https://crsreports.congress.gov/product/pdf/IF/IF10644/22 ........................................ 7

CRS Report, R41514,
    https://crsreports.congress.gov/product/pdf/R/R41514/10 ......................................... 7

CRS Report, RL34074,
    https://crsreports.congress.gov/product/pdf/RL/RL34074/57 ..................................... 7

General License 7a,
    *available at* https://ofac.treasury.gov/media/8396/download?inline ............................. 7

https://history.state.gov/milestones/1993-2000/oslo ....................................................... 7

https://www.state.gov/reports/country-reports-on-terrorism-2021/ ................................... 7

https://www.usaid.gov/sites/default/files/2022-05/Implementing_Partner_Notice_No._2022-
WBG-03_OFAC_License_-_Combined.pdf ..................................................................... 6

## INTRODUCTION

Defendants provided three primary reasons for why this case should be dismissed for lack of jurisdiction. Plaintiffs have a traceability problem—they have not plausibly alleged that Economic Support Fund ("ESF") assistance to the West Bank and Gaza directly benefits the Palestinian Authority, which in turn causes them an increased risk of harm when traveling to Israel in the future. Setting traceability and causation aside, Plaintiffs' alleged travel-related injuries cannot be redressed by this Court and are both speculative and generalized. These and other jurisdictional defects deprive this Court of subject matter jurisdiction. Briefing on these issues is complete, and this case is ripe for dismissal.

Plaintiffs, however, are now requesting jurisdictional discovery to "contradict[ ] the Defendants' traceability argument."[1] They point to a 2021 draft request to the Department of the Treasury's Office of Foreign Assets Control ("OFAC") requesting a license for transactions otherwise prohibited under applicable sanctions programs in light of the risk that Hamas "could potentially derive indirect, unintentional benefit from U.S. assistance to Gaza."[2] Based on this draft document, Plaintiffs seek leave to embark on a discovery safari involving document requests, interrogatories, a Rule 30(b)(6) deposition, and two depositions of senior State Department officials. To justify their extraordinary request, Plaintiffs assert that the draft license request "raises a fact question amenable to jurisdictional discovery."[3] It does not.

Plaintiffs' request for jurisdictional discovery fails out of the gate because Defendants' motion to dismiss is a facial challenge limited to the legal sufficiency of Plaintiffs' allegations. Those

---

[1]   The Plaintiffs' Brief in Support of Their Motion to Conduct Expedited and Limited Jurisdictional Discovery, ECF No. 29 ("Pl. Disc. Mem."), at 3.

[2]   Appendix to the Plaintiffs' Brief in Support of Their Motion for Leave to Conduct Expedited and Limited Jurisdictional Discovery, ECF No. 30 ("Pl. Disc. App'x"), at 10.

[3]   Pl. Disc. Mem. at 3.

allegations do not plausibly allege traceable connections between (i) ESF provided to the West Bank and Gaza and (ii) the Palestinian Authority's policy of providing prisoner payments. Numerous courts have rejected similar allegations in other cases. There simply is no "fact question amenable to jurisdictional discovery"—Defendants' motion to dismiss involves purely legal issues.

On substance, the draft license request concerns economic sanctions on *Hamas*, an entity that has been designated by the Department of State as a Specially Designated Global Terrorist ("SDGT"), and other SDGTs, as well as the potential impact of these sanctions on U.S. assistance in the West Bank and Gaza. This lawsuit, in contrast, concerns the Taylor Force Act's restriction on certain ESF that directly benefits the *Palestinian Authority*—an entity that is entirely different from Hamas, has not been designated as an SDGT, and is not a subject of the draft license request. The draft license request also involves a different standard than what is relevant here—whether Hamas might derive an "indirect, unintentional benefit" as opposed to the Taylor Force Act's restriction on certain ESF only if it "directly benefits" the Palestinian Authority. The draft license request is therefore irrelevant to the legal issues raised in Defendants' motion to dismiss.

Even if this Court concludes that the draft license request is somehow relevant, the Court should still deny Plaintiffs' motion for jurisdictional discovery. The Court can and should dismiss this lawsuit for lack of jurisdiction because Plaintiffs' alleged travel-related injuries are not redressable by this Court and are both speculative and generalized, and Plaintiffs' allegations of emotional distress cannot otherwise provide standing. The discovery Plaintiffs seek has no bearing on these additional issues, which separately justify dismissal of this case. Allowing Plaintiffs to engage in discovery before the Court resolves these independent jurisdictional and purely legal arguments would waste the Court's and the parties' time and resources.

Finally, if the Court permits discovery to proceed, Plaintiffs are not entitled to the broadranging discovery they seek. They have not placed any substantive limits on their proposed document

2

requests and interrogatories, and there is no justification for taking three depositions—including a Rule 30(b)(6) deposition—of State Department officials. Any discovery that this Court permits should be much more narrowly tailored, to the extent it permits any discovery at all.

## ARGUMENT

I.   **Discovery Regarding Traceability Is Inappropriate.**

   A.   **Defendants' Traceability Arguments Are Facial and Therefore Not Amenable to Jurisdictional Discovery.**

As this Court is aware, Article III standing requires "a causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The alleged harm must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997). Plaintiffs' discovery motion is premised on the fact that "Defendants challenge traceability, disputing the Plaintiffs' *allegations* that the Defendants are directly responsible for increasing the risk that they face from Palestinian terrorists." Pl. Disc. Mem. at 2 (emphasis added). Discovery is inappropriate, however, for the threshold reason that Defendants' traceability challenge is facial.

This Court has set forth the standard for resolving facial challenges to the allegations in a complaint. That standard does not include discovery:

> When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion. One essential aspect of proving jurisdiction is proof of standing, because the federal courts must decide cases and controversies rather than act as roving philosopher kings passing judgment on the validity of the nation's laws.

*Murphy v. Amarillo National Bank*, 2021 WL 40779, at *3 (N.D. Tx. 2021) (Kacsmaryk, J.) (internal citations omitted). This is black-letter law; courts permit jurisdictional discovery only when jurisdiction "turns on a disputed fact." *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012). Courts

do not permit jurisdictional discovery where a defendant has raised only a facial challenge to subject matter jurisdiction because such challenges do not dispute the facts as alleged in the complaint. *Hunter v. Branch Banking and Trust Co.*, 2012 WL 5845426, at *2 (N.D. Tx. 2012); *see also Davila v. United States,* 2011 WL 13138088, at *12 (W.D. Tx. 2011) (denying motion for jurisdictional discovery because the United States' motion was a facial, not factual challenge); *AccuCredit Associates, LLC v. Diversified Global Systems, LLC*, 2019 WL 11276332, at *2 n.4 (D.N.J. 2019) (rejecting plaintiff's request for jurisdictional discovery because defendants made a facial, not factual, challenge to subject matter jurisdiction).

Plaintiffs contend that "[t]his Court has broad discretion to permit the Plaintiffs to conduct jurisdictional discovery where, as here, the motion to dismiss raises issues of fact." Pl. Disc. Mem. at 3. Plaintiffs misread Defendants' motion to dismiss. The standard Defendants provided in their brief was for facial challenges. *See* Defs.' Mem. in Supp. of Their Mot. to Dismiss the Compl., ECF No. 20-1 ('Def. MTD Mem.), at 11 ("[w]here, as here, a defendant makes a facial attack"). And the substance of the motion specifically highlighted that "Plaintiffs' own allegations do not support their theory of causation." *Id.* at 14. Those allegations acknowledge the Palestinian Authority's continuing policy of prisoner payments, notwithstanding steep reductions in, and subsequent discontinuation of, ESF assistance in the West Bank and Gaza. *Id.* (citing Compl. ¶¶ 10, 12, 33). No amount of discovery can cure Plaintiffs' concession that ESF assistance has not impacted the Palestinian Authority's objectionable practice of prisoner payments. But even setting that specific concession aside, Plaintiffs' allegations regarding traceability fail generally—in a long and consistent line of cases courts have found these types of allegations insufficient to support standing. *Id.* at 14-16 (citing *Bernstein v. Kerry*, 962 F. Supp. 2d 122 (D.D.C. 2013), *aff'd*, 584 F. App'x 7 (D.C. Cir. 2014); *Indigenous People of Biafra v. Blinken*, 639 F. Supp. 3d 79, 86 (D.D.C. 2022); *Aerotrade, Inc. v. Agency for Int'l Dev., Dep't of State*, 387 F. Supp. 974, 975 (D.D.C. 1974); *Abulhawa v. U.S. Dep't of the Treasury*, 239 F. Supp. 24, 34 (D.D.C. 2017)).

The cases Plaintiffs rely upon, *see* Pl. Disc. Mem. at 3-4, do not change the conclusion that discovery is inappropriate here.  The two unpublished, in-circuit cases that Plaintiffs cite, *RapidDeploy, Inc. v. RapidSOS, Inc.*, No. 1:22-CV-00612-LY, 2022 WL 3045649 (W.D. Tex. Aug. 1, 2022), *report and recommendation adopted*, No. 1:22-CV-612-LY, 2022 WL 17814234 (W.D. Tex. Aug. 26, 2022), and *Getagadget, L.L.C. v. Jet Creations, Inc.*, No. 19-51019, 2022 WL 964204 (5th Cir. Mar. 30, 2022), are both irrelevant because both involved discovery regarding personal jurisdiction, not subject matter jurisdiction.[4]  Plaintiffs also cite two cases from within the D.C. Circuit, but one of those cases, *GTE New Media Services, Inc. v. BellSouth Corp.*, is also a personal jurisdiction case. 199 F.3d 1343, 1351 (D.C. Cir. 2000).  The other case, *Wesberry v. United States*, is a jurisdictional discovery case.  However, the D.C. Circuit's "standard for permitting jurisdictional discovery is quite liberal" such that a party need only "demonstrate[ ] that it can supplement its jurisdictional allegations through discovery."  205 F. Supp. 3d 120, 135 (D.D.C. 2016) (citation omitted).  The facts of that case also distinguish it:  plaintiffs' lawsuit was brought under the Federal Tort Claims Act ("FTCA"), pursuant to which courts in the D.C. Circuit "frequently grant jurisdictional discovery where plaintiffs have challenged the application of exceptions to the FTCA."  *Id.*  The court thus found that "limited discovery" was warranted to determine whether such an exception applied, which in turn required the court to "consider factual matters outside the Amended Complaint."  *Id.* at 136 (permitting discovery into whether the Park

---

[4]    To the extent analysis regarding personal jurisdiction is relevant, the court in *RapidDeploy* noted that "a plaintiff first must make a preliminary showing of jurisdiction," that discovery is inappropriate "when the record shows that the requested discovery is not likely to produce the facts needed to withstand a motion to dismiss," and that discovery "need not be permitted unless the motion to dismiss raises issues of fact."  *RapidDeploy*, 2022 WL 3045649 at *6-*7 (citation omitted).  Similarly, in *Getagadget* the Fifth Circuit noted that "the party opposing dismissal and requesting discovery bears the burden of demonstrating the necessity of discovery," with the court "affirm[ing] denials of discovery on questions of personal jurisdiction in cases where discovery sought could not have added any significant facts."  *Getagadget*, 2022 WL 964204, at *5 (cleaned-up and citation omitted).  For whatever it's worth, the magistrate judge in *RapidDeploy* recommended that jurisdictional discovery be denied, 2022 WL 3045649, at *7, which was adopted by the district court, 2022 WL 17814234 at *1; the Fifth Circuit similarly affirmed the district court's denial of discovery in *Getagadget*, 2022 WL 964204, at *6.

Service's decision not to install handrails on the stairs to Ford's Theater involved a discretionary or mandatory function). Neither the facts of that case, nor the D.C. Circuit's legal standards, are applicable here.

In sum, Defendants' traceability arguments are entirely facial and not amenable to discovery. The Court can (and should) assume that all of Plaintiffs' allegations are true; dismissal for lack of traceability (and therefore lack of standing) is still necessary. On that basis alone, this Court should deny Plaintiffs' motion.

### B. The Draft OFAC License Request Regarding Hamas Does Not Support Jurisdictional Discovery Because This Lawsuit Concerns a Unique Assistance Restriction Regarding the Palestinian Authority.

Even if this Court believes that Defendants' facial challenge is amenable to jurisdictional discovery, this Court should still deny Plaintiffs' motion. As the Fifth Circuit has explained, "[t]he party seeking discovery bears the burden of showing its necessity." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009). A party can meet this burden by alleging "specific facts . . . which demonstrate a need for discovery." *Id.* at 342 (citation omitted).

As their "need," Plaintiffs cite the draft license request concerning sanctions on *Hamas* and other terrorist groups to argue that discovery is necessary in this case alleging assistance to the *Palestinian Authority* in violation of a statutory assistance restriction.[5] Far from showing that discovery is "necess[ary]," the document is irrelevant to the issues in this case. The Palestinian Authority and Hamas are two separate entities. The Palestinian Authority was created through the Israeli-Palestinian

---

[5]     Plaintiffs assert that they became aware of the draft license request on August 17, 2023. Pl. Disc. Mem. at 1. The existence of the OFAC license itself, however, should come as no surprise to Plaintiffs or anyone else—USAID makes current OFAC licenses authorizing transactions necessary and ordinarily incident to providing economic, security, and humanitarian assistance in the West Bank and Gaza that would otherwise be prohibited by U.S. sanctions available on its website. *See* https://www.usaid.gov/sites/default/files/2022-05/Implementing_Partner_Notice_No._2022-WBG-03_OFAC_License_-_Combined.pdf (current license).

agreements known as the Oslo Accords as part of the Middle East peace process.  https://history.state.gov/milestones/1993-2000/oslo.  It is led by Fatah, a political party, and exercises governing authority in certain areas of the West Bank, with Israel administering others.  *Id.*; CRS Report, IF10644, at 1-2, https://crsreports.congress.gov/product/pdf/IF/IF10644/22.  Hamas, on the other hand, is a terrorist organization sanctioned by numerous countries, including the United States and Canada, that has exercised *de facto* control of Gaza since it violently expelled the Fatah-led Palestinian Authority in 2007.   CRS Report, R41514, at 1, https://crsreports.congress.gov/product/pdf/R/R41514/10;  CRS Report, RL34074, at 22, https://crsreports.congress.gov/product/pdf/RL/RL34074/57;  CRS Report, IF10644, at 1-2, https://crsreports.congress.gov/product/pdf/IF/IF10644;  https://www.state.gov/reports/country-reports-on-terrorism-2021/.    Since 2007, "the United States and other Western countries have generally sought to bolster the Fatah-led Palestinian Authority vis-à-vis Hamas." CRS Report, IF 10644, at 1.  Of the two entities, only Hamas is designated by the United States as an SDGT.  As a result, U.S. persons are generally prohibited by U.S. economic sanctions from engaging in transactions involving Hamas unless exempt or authorized.  CRS Report, RL34074, at 2.[6]

---

[6]    U.S. person transactions with the Palestinian Authority are addressed in OFAC regulations because, in 2006, OFAC determined that, as a result of elections at the time, Hamas had a property interest in Palestinian Authority transactions.  Accordingly, U.S. persons were prohibited from engaging in such transactions absent authorization.  However, based on the developments in the West Bank and Gaza in the ensuing months, including the appointment of Palestinian Authority leadership of individuals not affiliated with Hamas, OFAC issued a general license on June 20, 2007, to authorize U.S. person transactions with the Palestinian Authority that would have otherwise been prohibited by its counterterrorism sanctions regulations.  This authorization was then incorporated into OFAC's regulations on October 31, 2007.  *See* Global Terrorism Sanctions Regulations; Terrorism Sanctions Regulations; Foreign Terrorist Organization Sanctions Regulations, 72 Fed. Reg. 61,517 (Oct. 31, 2007) (General License 7 authorizing transactions with the Palestinian Authority); General License 7a, available at https://ofac.treasury.gov/media/8396/download?inline (clarifying in May 2013 the definition of the term "Palestinian Authority" in response to announced resignation of Palestinian Authority Prime Minister Salam Fayyad).  The authorization illustrates the distinction between Hamas and the Palestinian authority.

Plaintiffs acknowledge Hamas and the Palestinian Authority are two different entities, though they relegate that acknowledgement to a footnote where they state that "[o]ddly, the Department of State's OFAC application focused on the benefit created for Hamas as a result of ESF spending in Gaza without addressing whether similar spending in the 'West Bank' would benefit FTOs and the Palestinian Authority." Pl. Disc. Mem. at 1 n.1. There is nothing "odd" about this. Hamas is an SDGT; the Palestinian Authority is not.

Unlike their footnote, the body of Plaintiffs' motion blurs the distinction between Hamas and the Palestinian Authority while ignoring the fundamental difference between the legal framework for OFAC license applications involving economic sanctions authorities and the Taylor Force Act, a statutory assistance restriction. Plaintiffs also blur the line between SDGT designations and Foreign Terrorist Organization ("FTO") designations, which are distinct designations done pursuant to different authorities. Citing the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Plaintiffs assert that "[t]he law presumes that those who benefit FTOs increase the risk of terrorism" and that "Congress criminalized providing benefits to FTOs precisely because such benefits make terror attacks more likely to occur." Pl. Disc. Mem. at 3 (citations omitted) (emphasis removed). On that basis, Plaintiffs argue that "the revelation of *direct evidence* demonstrating the Department of State knew that its ESF fundings and related activities in the 'West Bank' and Gaza benefit Palestinian FTOs and require an OFAC waiver seemingly contradicts the Defendants' traceability argument." *Id.* (emphasis added). Nowhere in their paragraph describing this "direct evidence" do plaintiffs actually assert that the Palestinian Authority is an FTO—they cannot, because the Palestinian Authority has not been designated by the Secretary of State as an FTO, and therefore any supposed "presumption" under AEDPA that benefitting FTOs increases the risk of terrorism would not apply to the Palestinian Authority. Moreover, the draft license request addresses the risk that "Hamas could potentially derive *indirect*, unintentional benefit from U.S. assistance to Gaza." Pl. Disc. App'x at 10 (emphasis added).

That standard is different from the Taylor Force Act's restriction on ESF only if it "*directly* benefits" the Palestinian Authority.  22 U.S.C. § 2378c-1(a)(1) (emphasis added).

Plaintiffs' attempt to lump Hamas and the Palestinian Authority together highlights the irrelevance of the draft license request to the issues in this case.  Simply put, Plaintiffs have not offered any evidence regarding the Palestinian Authority and its treatment under the Taylor Force Act, and therefore cannot justify the discovery that they seek regarding those issues.  They implicitly acknowledge as much, asserting that the draft license request "suggests, with reasonable particularity, the possible existence of other facts, currently hidden, establishing traceability."  Pl. Disc. Mem. at 4.  But the "suggestion" of the "possible existence of other facts" falls far short of justifying the need for jurisdictional discovery—especially in light of Defendants' facial challenge to traceability.  It is, in other words, precisely the type of "jurisdictional fishing expedition" that Plaintiffs claim to disown. *See id.* at 3.

## II. Resolution of Defendants' Traceability Argument Is Not Necessary to Resolve Defendants' Motion to Dismiss.

Even if this Court is inclined to allow jurisdictional discovery regarding traceability, it should still defer any decision on Plaintiffs' discovery motion until it has resolved Defendants' alternative bases to dismiss this lawsuit for lack of jurisdiction.  Specifically, and in addition to lack of traceability, Defendants have moved to dismiss for lack of jurisdiction because this Court cannot redress Plaintiffs' alleged travel-related injuries and because any such injuries are speculative and generalized.  *See* Def. MTD Mem. at 16-21; Defs.' Reply in Supp. of Their Mot. to Dismiss the Compl., ECF No. 27 ("Def. MTD Reply"), at 5-9.  Defendants have also argued that Plaintiffs' allegations of emotional distress are insufficient to establish standing for those Plaintiffs who allege that injury.  *See* Def. MTD Mem. at 21-23; Def. MTD Reply at 9-10.[7]

---

[7]    The only Plaintiffs that alleged emotional distress are Robbi and Stuart Force and Sarri Singer.

9

"A federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citation omitted). In other words, "there is no mandatory 'sequencing of jurisdictional issues.'" *Daves v. Dallas County, Texas*, 64 F.4th 616 (5th Cir. 2023) (quoting *Sinochem Int'l Co.*, 549 U.S. at 431). If the Court agrees with Defendants, for example, that emotional distress does not provide a basis for standing and it cannot redress Plaintiffs' alleged travel-related injuries, *see* Def. MTD Mem. at 16-18; Def. MTD Reply at 5-7, then it must dismiss this lawsuit regardless of what discovery may or may not reveal about traceability. The same is true regarding Defendants' argument that Plaintiffs' alleged travel-related injuries are speculative and generalized. *See* Def. MTD Mem. at 18-21; Def. MTD Reply at 7-9.[8] To hold otherwise would permit Plaintiffs to engage in what will likely be costly and time-consuming discovery regarding the jurisdictional issue of traceability—an issue that would be irrelevant if the Court concludes that it lacks jurisdiction on other grounds. And if the Court otherwise lacks jurisdiction due to redressability problems or the speculative and generalized nature of Plaintiffs' injuries, it should not permit discovery into other jurisdictional issues: "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L. Ed. 264 (1868)).

---

[8]    In their motion, Plaintiffs cite Defendants' argument that Plaintiffs' injury "is entirely conjectural and does not establish their standing." Pl. Disc. Mem. at 2 (quoting Def. MTD Mem. at 19). While that section of Defendants' brief addresses the speculative and generalized nature of Plaintiffs' alleged injuries, Plaintiffs appear to be focused on traceability, citing Defendants' description of terrorism as "the result of many historic and current circumstances, and the independent actions of organizations, entities, and people who pursue violence." *Id.* (quoting Def. MTD Mem. at 19). Plaintiffs do not contend in their motion that discovery would yield information relevant to Defendants' arguments regarding the speculative and generalized nature of Plaintiffs' alleged injury.

Defendants' arguments regarding redressability, the speculative and generalized nature of Plaintiffs' injuries, and emotional distress are purely legal and fully briefed.  There simply is no reason for the Court to delay resolution of those issues in order to allow Plaintiffs to engage in discovery on a separate jurisdictional issue that may ultimately be irrelevant for this Court to determine it lacks jurisdiction.

## III.   Besides Being Unnecessary, Plaintiffs' Requested Discovery Is Vague and Unjustified in Its Breadth.

This Court should outright deny Plaintiffs' motion for jurisdictional discovery or, in the alternative, defer ruling on that motion until it has resolved Defendants' other jurisdictional arguments. Should the Court determine that jurisdictional discovery is necessary at this juncture, however, it should require a detailed justification from Plaintiffs on why any such discovery is necessary and place explicit limitations on its scope such that any requests are narrowly tailored.

As things now stand, Plaintiffs' motion seeks discovery that is nearly boundless in scope. Plaintiffs describe their jurisdictional discovery as "expedited and limited."  Pl. Disc. Mem. at 4.  Just a few lines later, however, Plaintiffs disown limitations on discovery when they describe discovery's scope to "include *but not be limited to* the Defendants' knowledge regarding the direct and indirect benefits of such assistance to the Palestinian Authority and to Foreign Terrorist Organizations operating within its jurisdiction or under its control and the reasons for and circumstances of the Department of State's request for an OFAC license."  Pl. Disc. Mem. at 4 (emphasis added).  Even the face of Plaintiffs' description would yield discovery far beyond what's at issue here—for example, Plaintiffs want discovery regarding the Department of State's draft request for an OFAC license concerning Hamas and other SDGTs, entities that are different from the Palestinian Authority.  Plaintiffs purport to limit the number of document requests and interrogatories that they would serve but provide no meaningful limitations on what those requests might entail—they could, for example, serve a request for all documents relating to ESF assistance to the West Bank and Gaza, effectively circumventing

11

Defendants' motion to dismiss.  Finally, Plaintiffs have not identified why they need to take three separate depositions, including a Rule 30(b)(6) deposition.  None are necessary.

## CONCLUSION

This Court lacks jurisdiction over Plaintiffs' claims; no amount of discovery would yield a different conclusion.  Accordingly, this Court should deny Plaintiffs' motion for leave to conduct jurisdictional discovery and grant Defendants' motion to dismiss.

Dated: September 13, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

DIANE KELLEHER
Assistant Director

*/s/ Brad P. Rosenberg*
BRAD P. ROSENBERG (DC Bar # 467513)
Special Counsel
SAMUEL REBO (DC Bar # 1780665)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 514-3374
brad.rosenberg@usdoj.gov
samuel.a.rebo@usdoj.gov
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 13, 2023, I electronically filed Defendants' Opposition to Plaintiffs' Motion for Leave to Conduct Discovery with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Brad P. Rosenberg*
BRAD P. ROSENBERG
Special Counsel
U.S. Department of Justice
