## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

|  |  |  |
|---|---|---|
| RONNY L. JACKSON, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 2:22-cv-241 |
| | ) | |
| JOSEPH R. BIDEN, JR., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
## MOTION TO DISMISS THE AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 1

I.      This Court Lacks Jurisdiction Over the UNRWA Challenge ........................................ 1

        A.      The Possibility of Future Legislation Cannot Establish Injury-in-Fact .......... 1

        B.      In the Alternative, Plaintiffs' UNRWA Challenge is Moot ............................. 5

II.     The Amended Complaint Does Not Identify Any Discrete, Final Agency Action
        Subject to Challenge ...................................................................................................... 6

CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Alabama-Coushatta Tribe of Tex. v. United States,*
757 F.3d 484 (5th Cir. 2014) ........................................................................................... 8, 10

*Alaska v. Dep't of Agric.,*
17 F.4th 1224 (D.C. Cir. 2021) ............................................................................................. 3

*APM & Assocs., Inc. v. N. Texas Tollway Auth.,*
No. 4:09-cv-506, 2010 WL 11627811 (E.D. Tex. Sept. 29, 2010) ....................................... 4

*City of Austin v. Paxton,*
943 F.3d 993 (5th Cir. 2019) ................................................................................................ 2

*City of New York v. Dep't of Def.,*
913 F.3d 423 (4th Cir. 2019) ................................................................................................ 9

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ......................................................................................................... 2, 3

*Ctr. for Democracy & Tech. v. Trump,*
507 F. Supp. 3d 213 (D.D.C. 2020) ...................................................................................... 3

*Fantasy Ranch Inc. v. City of Arlington,*
459 F.3d 546 (5th Cir. 2006) ................................................................................................ 5

*FBI v. Fikre,*
601 U.S. 234 (2024) .............................................................................................................. 6

*Fontenot v. McCraw,*
777 F.3d 741 (5th Cir. 2015) ................................................................................................ 4

*King v. Dogan,*
31 F.3d 344 (5th Cir. 1994) .................................................................................................. 7

*Louisiana ex rel. Landry v. Biden,*
64 F.4th 674 (5th Cir. 2023) ................................................................................................ 2

*Louisiana v. Haaland,*
86 F.4th 663 (5th Cir. 2023) ................................................................................................ 2

*Louisiana v. United States,*
948 F.3d 317 (5th Cir. 2020) ................................................................................................ 8

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ......................................................................................................... 2, 3

*Lujan v. Nat'l Wildlife Fed'n,*
　497 U.S. 871 (1990) .................................................................................................... 9

*Roark & Hardee LP v. City of Austin,*
　522 F.3d 533 (5th Cir. 2008) ........................................................................................ 2

*Sierra Club v. Peterson,*
　228 F.3d 559 (5th Cir. 2000) ................................................................................... 9, 10

*Skinner v. Gautreaux,*
　549 F. Supp. 3d 493 (M.D. La. 2021) .......................................................................... 7

**Statutes**

Further Consolidated Appropriations Act, 2024,
　Pub. L. No. 118-47, 138 Stat. 460 (2024) .................................................................... 3

**Rules**

Fed. R. Civ. P. 8 ................................................................................................................ 8

Fed. R. Civ. P. 12 ............................................................................................................ 10

**Other Authorities**

USAID, *Administrator Samantha Power at a Press Availability Following Her Trip to Jordan, Israel and the West Bank* (Feb. 29, 2024),
　https://perma.cc/XFG8-AGRS ...................................................................................... 5

U.S. Dep't of State, *Press Briefing* (Mar. 12, 2024),
　https://perma.cc/WB9R-FX7E ...................................................................................... 4

## INTRODUCTION

This Court lacks jurisdiction over Plaintiffs' Amended Complaint for two reasons. First, Plaintiffs lack standing to challenge contributions to the United Nations Relief and Works Agency for Palestine Refugees in the Near East (UNRWA). In their opposition, Plaintiffs acknowledge that no such contributions have occurred over the past five months, and that current appropriations law prohibits any such contributions. Opp'n (ECF No. 54) at 4-5. Plaintiffs also concede that they are not currently suffering any injury stemming from UNRWA contributions, nor were they suffering any such injury at the time their Amended Complaint was filed. Instead, Plaintiffs argue that there is a "significant possibility" that UNRWA contributions might resume at some point in the future, and thus they have standing based on that "significant possibility" of future injury. But Article III requires that a future injury be certainly impending, not simply possible. And Plaintiffs ignore the numerous cases holding that injuries dependent on future legislative action are too contingent for Article III. Thus, Plaintiffs lack standing to challenge UNRWA contributions.

Second, Plaintiffs' Amended Complaint fails to challenge discrete agency action. The Amended Complaint contains a single claim challenging the purported reversal of the "Trump Policy." Plaintiffs' opposition does not meaningfully defend their ability to bring that claim. Instead, they seek to recharacterize their Amended Complaint as challenging some undefined universe of "discrete [economic support funds (ESF)] and UNRWA funding decisions," Opp'n at 15. But that claim is not pled in the Amended Complaint, and even if it were, it too would fail for not identifying the specific actions being challenged. Thus, the sole claim in the Amended Complaint should be dismissed.

## ARGUMENT

## I.    THIS COURT LACKS JURISDICTION OVER THE UNRWA CHALLENGE

### A.    The Possibility of Future Legislation Cannot Establish Injury-in-Fact

Plaintiffs lack Article III standing because they assert "hypothetical future harm that is not

certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013). Plaintiffs' alleged injury depends on future funding legislation that Congress has not and may never pass, and on predicting Defendants' future decision-making about this future funding. *See* MTD (ECF No. 49) at 14-18.

Plaintiffs do not argue that they were being injured by UNRWA contributions as of March 25, 2024 (the date their Amended Complaint was filed), nor do they dispute that the Court should assess standing as of that date. *See generally* Opp'n at 8-10. Rather, they assert that they have standing "if the Court finds that there is a 'significant possibility' the Defendants will resume funding[.]" *Id.* at 8 (quoting *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019)). As an initial matter, this "significant possibility" standard is too low to establish this Court's Article III jurisdiction. The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (cleaned up); *see also Louisiana v. Haaland*, 86 F.4th 663, 666 (5th Cir. 2023) ("A threatened future injury must be 'certainly impending' to constitute an injury in fact[.]" (quoting *Clapper*, 568 U.S. at 410)); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992). Plaintiffs make no attempt to establish that resumed UNRWA contributions are "certainly impending" as opposed to merely possible.[1]

Plaintiffs also ignore the numerous cases holding that plaintiffs lack standing to challenge possible future legislation or government action. *See Louisiana ex rel. Landry v. Biden*, 64 F.4th 674, 681 (5th Cir. 2023) ("It is well accepted that the mere 'possibility of regulation' fails to satisfy injury in fact."); *see also* MTD at 17-18. Those cases are dispositive here, because current appropriations law forbids the State Department from using any already-appropriated funds to provide UNRWA

---

[1] Plaintiffs' cited authority does not support standing based on only possible future injuries. In *Paxton*, the court of appeals held that the plaintiffs failed to satisfy even the "significant possibility" standard, *see* 943 F.3d at 1003, so there was no need for that court to consider any higher standard. Moreover, *Paxton* derived the "significant possibility" standard from *Roark & Hardee LP v. City of Austin*, 522 F.3d 533 (5th Cir. 2008), which itself made clear that Article III requires a plaintiff to "show that he or she . . . *is immediately in danger of sustaining* some direct injury," and this "threat of injury must be . . . 'real and immediate,'" *id.* at 542, which is akin to the certainly impending requirement.

contributions. Any future UNRWA contributions, therefore, would require (1) new legislation providing the State Department with appropriations that are legally available for UNRWA contributions, and that does not include the prohibition on all UNRWA contributions contained in the State Department's last two appropriations acts; *and* (2) a decision by the State Department to use that funding to make such contributions. *See* MTD at 11, 16-17. Such "conjectural or hypothetical" events foreclose Article III jurisdiction. *Defs. of Wildlife*, 504 U.S. at 560; *see also Clapper*, 568 U.S. at 414.

Plaintiffs wrongly imply that their alleged future injury does not rely on the passage of future legislation, by asserting that Defendants are free "to fund the Relief Works Agency after March 2025 directly." Opp'n at 9 n.7. Contrary to Plaintiffs' claim, however, the Further Consolidated Appropriations Act of 2024 prohibits Defendants from providing *any* currently (or previously) appropriated funds to UNRWA *without* time limitation. *See* MTD at 11 (citing Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. G, tit. III, § 301, 138 Stat. 460, 858 (2024)). That law also provides that *even if* Congress appropriates funds in the future that could legally be provided to UNRWA, Defendants cannot make any contributions to UNRWA until, at the earliest, March 25, 2025. *Id.* Thus, Plaintiffs will not incur their alleged future harm unless and until Congress passes new legislation appropriating new funding that is legally available for UNRWA contributions—which is an inherently speculative proposition, especially when real-world "[i]ntervening events . . . are unpredictable." *Alaska v. Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021). Plaintiffs cite no case finding Article III standing based on an injury dependent on hypothetical future legislation. *See* MTD at 17-18; *accord Ctr. for Democracy & Tech. v. Trump,* 507 F. Supp. 3d 213, 223 (D.D.C. 2020) ("If such speculative future government action could support an injury in fact, it is hard to imagine what would *not* satisfy that requirement."). Indeed, even Plaintiffs seemingly concede that future appropriations for UNRWA are speculative, given that current law is *more* restrictive than either a "calendar-year ban" or a "fiscal-year ban," Opp'n at 9 n.7, because current law restricts not just current appropriations but

3

also any *future* funds that may be appropriated (until at least March 2025).

Ignoring that their claimed harm requires future legislation, Plaintiffs instead focus on arguing that Defendants "have repeatedly affirmed that they will return to their 'old ways' [of funding UNRWA] as soon as possible." Opp'n at 10 (quoting *Fontenot v. McCraw*, 777 F.3d 741, 747-48 (5th Cir. 2015)). But this argument is wrong both legally and factually. On the law, Plaintiffs rely exclusively on *Fontenot*'s discussion of mootness, not standing. And the standing discussion is what is relevant here, because it confirms that a plaintiff cannot challenge conduct that had already ceased prior to the filing of an amended complaint. *Fontenot*, 777 F.3d at 746-47; MTD at 16. Here, UNRWA contributions had already stopped by the time Plaintiffs' amended complaint was filed; thus, Plaintiffs lack standing under *Fontenot* independent of any of the mootness factors.

Factually, Plaintiffs misconstrue the relevant government officials' statements.[2] First, Plaintiffs quote the State Department spokesperson as saying that the United States' position on UNRWA "has not changed." U.S. Dep't of State, *Press Briefing* (Mar. 12, 2024), https://perma.cc/WB9R-FX7E; *see* Opp'n at 5-6, 10. But that statement cannot demonstrate an intent to resume UNRWA contributions "as soon as possible," Opp'n at 10, because at that time the State Department was voluntarily *not* making UNRWA contributions. The full quote makes this plain: "When it comes to UNRWA, our position has not changed. As you know, we have paused our funding while the investigations are ongoing, and we have been exploring ways to continue to deliver humanitarian assistance through other partners on the ground – UNICEF, the World Food Program." *Press Briefing* (Mar. 12, 2024); *see also id.* ("[W]e obviously have a pause in place with funding for UNRWA right now. We have to plan for the fact that Congress may make that pause permanent. I don't know that that's going to happen

---

[2] Plaintiffs also rely on a lengthy discussion of news articles that—unlike the materials cited in Defendants' motion to dismiss, *cf.* Opp'n at 16 n.8—were neither cited in nor attached to the Amended Complaint and are not otherwise judicially noticeable. Such materials are therefore not properly before the Court on a motion to dismiss. *E.g.*, *APM & Assocs., Inc. v. N. Texas Tollway Auth.*, No. 4:09-cv-506, 2010 WL 11627811, at *3 n.2 (E.D. Tex. Sept. 29, 2010).

and we haven't made the determinations with respect to . . . what the administration will do[.]").

Plaintiffs also invoke statements from the Administrator of the U.S. Agency for International Development—an independent agency that is not even a defendant here, and that does not provide funding to UNRWA. *See* MTD at 2-4, 8-9. Nonetheless, the quoted statement simply confirms that the United States' "focus is on meeting humanitarian needs," which will "continue to be our focus" regardless of "whether UNRWA directly receives U.S. funding or not[.]" USAID, *Administrator Samantha Power at a Press Availability Following Her Trip to Jordan, Israel and the West Bank* (Feb. 29, 2024), https://perma.cc/XFG8-AGRS. Again, that statement hardly demonstrates that the State Department will resume UNRWA contributions (much less that future legislation will be enacted allowing State to do so).

Ultimately, Plaintiffs' claim depends on contingent future events—future legislation, followed by future discretionary decisions by the State Department—with all such events being materially the same as the past actions Plaintiffs believe were unlawful, notwithstanding that real-world events are continually evolving. Such speculative future injury does not suffice under Article III.

### B.    In the Alternative, Plaintiffs' UNRWA Challenge is Moot

Plaintiffs do not dispute that the jurisdictional defect here is best viewed as lack of standing. Thus, there is no need for the Court to consider mootness at all.

To the extent the Court itself concludes that mootness is the appropriate framework, however, the result is no different. Plaintiffs ignore the multiple cases establishing that "statutory changes that discontinue a challenged practice are usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 564 (5th Cir. 2006)); *see also* MTD at 18. Plaintiffs assert that Defendants have not provided any case law where a "one-year appropriations restriction" moots "an otherwise live Administrative Procedure Act" case, Opp'n at 10-11, but as explained above, Congress permanently

5

restricted Defendants from giving currently appropriated funds to UNRWA, so Plaintiffs' future injury necessarily relies on legislation that Congress has not and may never pass. Accordingly, this case parallels the many matters Defendants cite where legislation moots an otherwise live challenge (even if future legislation could resume the challenged conduct).

For similar reasons, *FBI v. Fikre*, 601 U.S. 234 (2024), is irrelevant here, because that case did not involve legislative suspension of the challenged conduct, nor did it involve the challenged conduct stopping *before* plaintiffs filed their challenge (which eliminates any potential of litigation posturing). Here, the challenged conduct cannot "reasonably be expected to recur," *id.* at 241, because (among other reasons) Defendants currently lack legal authority under appropriations law to provide UNRWA contributions. This case is therefore moot.

## II.    THE AMENDED COMPLAINT DOES NOT IDENTIFY ANY DISCRETE, FINAL AGENCY ACTION SUBJECT TO CHALLENGE

Regardless of standing to challenge UNRWA contributions, this Court lacks jurisdiction because Plaintiffs' Amended Complaint does not challenge a discrete, final agency action. Plaintiffs essentially concede that neither the "Trump Policy" nor the purported reversal of that policy is itself an agency action subject to challenge. Instead, they try to re-characterize their Amended Complaint as presenting a different claim. But this new version of their claim—apparently challenging every individual award of economic support funds and every individual UNRWA contribution, at least over the past three-and-a-half years—has no basis in the Amended Complaint itself, and in any event is also not cognizable under the APA.

**A.** Plaintiffs' opposition does not dispute any of the governing law regarding the bar on programmatic challenges. *See* MTD at 19-25. Nor does Plaintiffs' opposition defend their ability to bring an APA challenge to the purported reversal of the "Trump Policy." Indeed, Plaintiffs now concede that, even under their own definition, the "Trump Policy" was comprised of multiple different agency actions. *See* Opp'n at 16 ("The amended complaint defines 'Trump Policy' as

*encompassing separate actions* involving ESF and UNRWA funding[.]" (emphasis added)). Thus, neither the "Trump Policy" nor its reversal is a discrete action properly subject to APA challenge.

Rather than defend their challenge to the reversal of the "Trump Policy," Plaintiffs instead portray the Amended Complaint as maintaining their prior claim about economic support funds, and "merely adding *other* discrete agency actions as additional targets[.]" *Id.* at 12; *see also id.* at 13-14. But that argument is irreconcilable with the Amended Complaint itself. Plaintiffs did not merely add UNRWA allegations and leave their existing ESF allegations untouched; rather, Plaintiffs fundamentally re-framed their claim around the "Trump Policy," and expressly sought to challenge the purported reversal of that policy. *See* Am. Compl. (ECF No. 43) ¶¶ 1, 3, 9, 48, 54, 101, 109-12. From the outset, paragraph 1 of the Amended Complaint defines the Trump Policy, and paragraph 3 alleges that "Defendants arbitrarily, capriciously, and unlawfully changed the Trump Policy when they took power on January 20, 2021." *Id.* ¶¶ 1, 3.

In describing the sole claim presented, the Amended Complaint alleges that "Defendants' decision to reverse the Trump Policy . . . was unlawful" for seven enumerated reasons. *Id.* ¶ 111. Those seven reasons each challenge alleged flaws in the purported decision to *resume* economic support funds and UNRWA contributions, not any flaws inherent in individual funding decisions. *Id.* ¶ 111(a)-(g). And in their Prayer for Relief, Plaintiffs request "[a]n injunction barring the Defendants from reversing the Trump Policy[.]" *Id.*, Prayer for Relief ¶ (E). There is no ambiguity here; Plaintiffs' claim in the Amended Complaint challenges the purported reversal of the "Trump Policy." Plaintiffs cannot seek to recharacterize that claim in their opposition and save it from dismissal. *See Skinner v. Gautreaux*, 549 F. Supp. 3d 493, 499 (M.D. La. 2021) ("[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."). Nor can Plaintiffs rely on the claim as pled in their original Complaint, which has now been "supersede[d]" and is "of no legal effect." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Thus, the sole claim that has been pled in the Amended Complaint—

which Plaintiffs do not defend, and which is pled at a much higher level of generality than the claims in the original Complaint—should be dismissed.

**B.** Because Plaintiffs cannot recharacterize their claim at this stage, the Court need not consider whether the claim described in their opposition would be allowed to proceed. Even if the Court agreed, however, that the Amended Complaint should be read as Plaintiffs contend—as seeking to "allege[] violations from discrete ESF and UNRWA funding decisions," Opp'n at 15—the claim would still fail because it does not challenge any specific, discrete agency actions.

Despite Plaintiffs' repeated insistence that "the amended complaint plausibly alleges Administrative Procedure Act violations as to discrete Economic Support Funds *and* Relief Works Agency funding decisions," *id.* at 16, nowhere does the Amended Complaint identify even a single funding decision that Plaintiffs wish to challenge. Under binding Fifth Circuit precedent, Plaintiffs' APA claim therefore fails. *See Louisiana v. United States*, 948 F.3d 317, 321 (5th Cir. 2020) (under the APA, "the person claiming a right to sue must identify some 'agency action'" they wish to challenge); *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 490 (5th Cir. 2014) ("Because the Tribe fails to point to any identifiable 'agency action' within the meaning of § 702 . . . we hold that the Tribe has failed to prove that subject-matter jurisdiction exists for this lawsuit."); *see also* MTD at 19. Nothing about Rule 8's permission to plead claims in the alternative, *see* Opp'n at 13 (citing Fed. R. Civ. P. 8(d)(2)), excuses Plaintiffs from their duty to identify the agency actions they wish to challenge.

Rather than identify any specific funding decisions they are challenging, Plaintiffs instead argue that this Court's prior motion to dismiss opinion relieves them of that obligation. *See id.* at 12, 14, 16-17. That is incorrect. For one thing, this Court could not have addressed the propriety of Plaintiffs' current challenge, given that the Amended Complaint was not then before the Court. More fundamentally, this Court's prior opinion identified what it believed was a discrete universe of funding decisions at issue in Plaintiffs' prior Complaint—*i.e.*, Plaintiffs "object only to Defendants' inclusion

of 'Economic Support Funds in West Bank and Gaza funding, whether through non-governmental entities' or otherwise 'that directly benefit the Palestinian Authority and do not comply with [the Taylor Force Act].'" MTD Op. (ECF No. 38) at 10; *see also id.* at 11 (describing the claim as plausibly alleging that Defendants were circumventing the Taylor Force Act by providing economic support funding to non-governmental organizations controlled by the Palestinian Authority). That holding did not excuse Plaintiffs from pleading the final agency actions they wish to challenge, and in fact the Court expressly noted that even if a plaintiff "identif[ies] specific allegedly improper final agency actions within [a] program," the plaintiff still cannot "challenge [the] entire program" itself. *Id.* at 10 (quoting *Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000) (en banc)).

This Court's prior opinion thus confirms the deficiencies in Plaintiffs' Amended Complaint. Despite knowing that this Court has previously required Plaintiffs to "challenge a discrete agency action," MTD Op. at 10, the Amended Complaint can only be construed as challenging *all* economic support funds (contrary to this Court's prior Order), *as well as* all UNRWA contributions (which were never referenced in the original Complaint and which are not subject to the Taylor Force Act), at least over the three-and-a-half year period since January 20, 2021. Plaintiffs' opposition confirms as much, highlighting that the "agency actions" that are the "targets" of their claim, Opp'n at 12, are every single funding decision for economic support funds and UNRWA contributions:

> The Defendants' decision to … resume Economic Support Fund awards and United Nations Relief Works Agency contributions, and *each* Economic Support Fund award or Relief Works Agency contribution made thereafter, are *each* final agency actions under 5 U.S.C. §§ 551(11)(a) and (13).

*Id.* (quoting Am. Compl. ¶ 110). Purporting to challenge every funding decision over a three-and-a-half year period is just another way of describing an impermissible programmatic challenge. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-91 (1990) (rejecting as impermissibly broad a challenge to "1250 or so individual classification terminations and withdrawal revocations"); *City of New York v. Dep't of Def.*, 913 F.3d 423, 433 (4th Cir. 2019) (rejecting attempt to characterize a "broad claim as

simply an aggregation of many small claims," because "any limit on programmatic assessment would be rendered meaningless if such an argument prevailed"); *Sierra Club*, 228 F.3d at 567-68.

Nothing in this Court's prior motion to dismiss opinion countenances this type of expansive challenge, expressly seeking to litigate Defendants' ongoing compliance with the law even as to agency actions that have not yet occurred. *See* MTD at 24. And there is no conceivable way to understand the single claim in the Amended Complaint as challenging a discrete set of funding decisions. The claim is either (as Defendants contend) challenging the purported reversal of the "Trump Policy," or it is (as Plaintiffs contend) challenging *each* ESF decision and UNRWA contribution since January 2021. In either scenario, the Amended Complaint "fails to point to any identifiable 'agency action' within the meaning of § 702," and thus jurisdiction is lacking. *Alabama-Coushatta Tribe*, 757 F.3d at 490.

Ultimately, this argument is not a mere pleading formality. Were this Court to allow this case to proceed beyond the motion-to-dismiss stage, it would very likely be infeasible for the agency defendant here—the State Department—to prepare an administrative record supporting its decisions with respect to this undefined universe of funding decisions. To the extent the Court is not inclined to outright dismiss Plaintiffs' claims, then, the Court should at a minimum direct Plaintiffs to identify the specific, discrete funding decisions that they are challenging—not in terms of general categories, but in terms of the specific monetary awards or contributions that Plaintiffs believe were unlawful final agency actions. *See* Fed. R. Civ. P. 12(e); *cf. also* MTD App'x & Suppl. App'x, ECF Nos. 20-2, 50 (providing detailed information about intended ESF awards). The Amended Complaint is wholly lacking in details regarding the agency actions being challenged, which is itself a jurisdictional defect— but at a minimum, even if the Court disagrees on dismissal, the Court should at least require Plaintiffs to identify their specific challenged actions to allow this case to unfold in an orderly manner.

## **CONCLUSION**

For the reasons stated herein, the Court should dismiss this action.

Dated: June 27, 2024                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         *Principal Deputy Assistant Attorney General*

                                         ALEXANDER K. HAAS
                                         *Director*

                                         */s/ Daniel Schwei*
                                         DANIEL SCHWEI (NY Bar #4901336)
                                         Special Counsel
                                         SAMUEL REBO (DC Bar #1780665)
                                         Trial Attorney
                                         United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street NW
                                         Washington, DC 20005
                                         (202) 305-8693
                                         daniel.s.schwei@usdoj.gov

                                         *Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 27, 2024, I electronically filed the foregoing Reply Memorandum

in Support of the Motion to Dismiss, with the Clerk of the Court for the United States District Court

for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered

CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Daniel Schwei*
DANIEL SCHWEI
U.S. Department of Justice