IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| RONNY L. JACKSON, *et al.*, | |
| Plaintiffs, | |
| v. | 2:22-CV-241-Z |
| JOSEPH R. BIDEN, JR., *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss ("Motion") (ECF No. 48), filed on May 9, 2024. Plaintiffs filed a response on June 6, 2024, and Defendants replied on June 27, 2024. Having reviewed the materials and relevant law, the Court **DENIES** Defendants' Motion.

### BACKGROUND

Plaintiffs Ronny Jackson, Stuart and Robbi Force, and Sarri Singer regularly visit Israel.[1] ECF No. 43 at 4–5. On December 20, 2022, they filed a complaint challenging funding that Defendants provided "to the West Bank and Gaza." ECF No. 1 at 17. Defendants moved to dismiss that complaint on April 10, 2023. ECF No. 20. On February 2, 2024, this Court granted Defendants' motion in part. ECF No. 38. It found, *inter alia*, that (1) Defendants plausibly violated statutory authority and (2) Plaintiffs had standing to challenge those alleged violations because they faced an increased risk of harm in traveling to Israel — harm that was "reasonably tied to Defendants and redressable by the relief sought." *Id.* at 3. Plaintiffs filed an amended complaint on March 25, 2024, that "contains new allegations" concerning October 7. ECF Nos. 41, 43.

---

[1] Dr. Ronny Jackson is a Member of the United States House of Representatives from the 13th Congressional District of the State of Texas. ECF No. 43 at 4. Stuart and Robbi Force are the parents of Taylor Force, a West Point graduate and veteran after whom the Taylor Force Act is named. *Id.* at 4–5. Sarri Singer is a survivor of a Palestinian terrorist attack conducted by a suicide bomber in Jerusalem, Israel. *Id.* at 5.

In 2018, the Trump administration terminated Economic Support Fund awards in the West Bank and Gaza and ceased contributions to the United Nations Relief Works Agency ("UNRWA"). ECF No. 43 at 1. Plaintiffs call this the "Trump Policy." *Id.* at 1–2, 4, 16, 28, 30. Then, according to Plaintiffs, "Defendants arbitrarily . . . and unlawfully changed the Trump Policy" on January 20, 2021. *Id.* at 2. Pursuant to that change, Defendants "obligated or transferred more than $1.5 billion to Gaza and the West Bank through Economic Support Fund awards and United Nations Relief Works Agency contributions" between January 20, 2021, and the date of Plaintiffs' amended complaint. *Id.* at 3.

Plaintiffs allege that Defendants' conduct violates the Administrative Procedure Act ("APA") and the Taylor Force Act ("TFA") — the latter of which prohibits assistance "that directly benefits the Palestinian Authority." *Id.* at 12. One exception to that prohibition is if the Palestinian Authority ("PA") "terminate[s] payments for acts of terrorism against Israeli citizens and United States citizens." 22 USCA § 2378c–1(a)(1)(B). It has not — a fact that Defendants do not appear to dispute. ECF No. 43 at 13 ("No Secretary of State has ever made the requisite certification because the Palestinian Authority has not taken credible steps to end acts of violence against Israeli citizens and United States citizens . . . ."); *see also* Sharon Wrobel, *State Department Report Acknowledges Palestinian Authority Payments to Terrorists as Biden Administration Seeks to Resume Aid*, THE ALGEMEINER (Mar. 24, 2021).

Defendants move to dismiss Plaintiffs' amended complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(1). ECF No. 49 at 19. While Defendants "do not seek to relitigate any of the issues previously decided in connection with their prior motion to dismiss," they aver that Plaintiffs have "fundamentally changed the nature of their claim." *Id.* at 8. In sum and substance, Defendants characterize Plaintiffs as asserting

a single APA claim "framed around challenging 'Defendants' decision to reverse the Trump Policy[.]'" *Id.* (quoting ECF No. 43 at 30). And they argue that (1) Plaintiffs lack standing to raise their challenge to UNRWA contributions and (2) the amended complaint's core charge is impermissibly "amorphous." *Id.* at 20–21.

### LEGAL STANDARD

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 271 (5th Cir. 2021). "A district court may dismiss a case under Rule 12(b)(1) based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020) (internal marks omitted). When a motion to dismiss for lack of subject matter jurisdiction "is decided solely on the pleadings, the plaintiff is entitled to a generous construction similar to a 12(b)(6) dismissal." *Id.* at 381 n.1.

### ANALYSIS

#### I.   Plaintiffs have standing to challenge UNRWA contributions.

Defendants argue that Plaintiffs lack standing to challenge Defendants' UNRWA contributions because (1) "the State Department had already paused contributions to UNRWA" and (2) "Congress had affirmatively prohibited the State Department from making any such contributions" by the time the amended complaint was filed on March 25, 2024. ECF No. 49 at 8. As such, "Plaintiffs were not plausibly suffering any injury from UNRWA contributions at the time they filed their amended complaint." *Id.* at 20. Plaintiffs respond that they "have standing to seek declaratory relief because there is a significant possibility that Relief Works Agency funding . . . will continue." ECF No. 54 at 13. Plaintiffs have the stronger argument.

3

First, Defendants' primary support — *Fontenot v. McCraw*, 777 F.3d 741, 744 (5th Cir. 2015) — is of limited relevance. In *Fontenot*, the Fifth Circuit held that a plaintiff did not have standing to sue the Texas Department of Public Safety ("DPS") over incorrect driving records after those records had been corrected. *Id.* at 746. Per the Fifth Circuit, DPS "had already provided a complete remedy." *Id.* But this case is readily distinguishable. Unlike a specific driving conviction incorrectly reported on a record — an isolated incident that is conclusively resolvable — Congress has withheld the challenged funding "for *only one* calendar year."[2] ECF Nos. 54 at 14; 49 at 18. (emphasis added). And prior to Congress intervening, the State Department merely announced "that it had *paused* further contributions to UNRWA" in response to "allegations that twelve UNRWA employees may have been involved in the October 7 Hamas terrorist attack on Israel." ECF No. 49 at 17 (emphasis added). Moreover, Plaintiffs have provided evidence that Defendants' support for UNRWA is undiminished:

> [T]he Department's spokesman, after acknowledging Israel's longstanding concerns about the Relief Works Agency's support for Palestinian terrorism, affirmed that such support "*doesn't change our* [the Defendants'] *position* with respect to UNRWA . . . ." When asked, "Does that mean the U.S. has decided that UNRWA is not the organization for the future?" he replied, "*No-no*. This is something I spoke to before when I've been asked about the fact that the supplemental request that passed the Senate contained a prohibition on funding for UNRWA."

*Id.* at 9–10 (emphasis added); DEP'T OF STATE, *Department Press Briefing — March 12, 2024* (Mar. 12, 2024), https://www.state.gov/briefings/department-press-briefing-march-12-2024/. Similar comments were made by the administrator of the United States Agency for International Development ("USAID"), who reaffirmed — after the State Department announced its intention to pause UNRWA contributions — the agency's support for UNRWA. ECF No. 54 at 10.

---

[2] "The text of the legislation states that Relief Works Agency funding will be banned 'for any amounts provided in prior fiscal years or in fiscal year 2024 or for amounts provided in fiscal year 2025, until March 25, 2025.' The clause . . . allow[s] the Defendants to fund the Relief Works Agency after March 2025 directly." ECF No. 54 at 13.

Second, Plaintiffs' challenge is not moot. If Defendants' argument is correct, a government agency could perpetually evade judicial review by merely pausing — temporarily — the funding that was challenged. Neither the Supreme Court's nor the Fifth Circuit's precedents allow for that sort of judicial maneuvering. *See Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) ("A live case or controversy cannot be so easily disguised, and a federal court's constitutional authority cannot be so readily manipulated."). Instead, "[t]o show that a case is truly moot, a defendant must prove 'no reasonable expectation' remains that it will 'return to [its] old ways.'" *Id.* (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)). Defendants fail to do so.

## II.     Plaintiffs state a claim under the APA.

Next, Defendants argue that, unlike Plaintiffs' first complaint, which challenged "only certain awards of economic support funds," their current one "now contains a new, expanded" claim: namely, that Defendants' "decision to reverse the Trump Policy" was unlawful. As such, Plaintiffs' amended complaint does not "challenge a discrete, final agency action, and instead seeks to superintend Defendants' funding decisions generally." ECF No. 49 at 27. In Defendants' view, such a claim is impermissibly programmatic.

But Defendants misunderstand Plaintiffs' claims and the standards that apply to them. When Plaintiffs use the term "Trump Policy," they are referring *not* to something amorpheous or indeterminate, but to that administration's (1) termination of Economic Support Fund awards in the West Bank and Gaza and (2) ceasing of contributions to the United Nations Relief Works Agency in 2018. ECF No. 43 at 1. Their amended complaint makes that distinction clear. Accordingly, Defendants' decision to *resume* those two sources of funding each constitute discrete and final agency actions. It may be that Plaintiffs' "Trump Policy" shorthand is less clear than simply referring to two distinct funding streams — but because their amended complaint

incorporates both descriptions, it is not so unclear as to render their claims insufficient at this stage of litigation. *See* FED. R. CIV. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); *see also Sierra Club v. Glickman*, 156 F.3d 606, 611 (5th Cir. 1998) (allowing plaintiffs to combine claims into one for pleading purposes).

Second, in ruling on Defendants' first motion to dismiss, this Court recognized that Plaintiffs' challenge to Economic Support Funds was not impermissibly programmatic:

> Plaintiffs do not challenge all funding to the West Bank and Gaza. ECF No. 24 at 31. Rather, they object only to Defendants' inclusion of "Economic Support Funds in West Bank and Gaza funding, whether through non-governmental entities" or otherwise "that directly benefit the Palestinian Authority and do not comply with [the TFA]." *Id.*; ECF No. 1 at 11. And in doing so, Plaintiffs challenge a discrete agency action. ECF Nos. 1 at 20; 24 at 31.
>
> Moreover, a challenge is not programmatic merely because it may have "the effect of requiring a regulation, a series of regulations, or even a whole 'program' to be revised by the agency." *Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000). True, "this ability does not allow [a plaintiff to challenge an entire program by simply identifying specific allegedly improper final agency actions within that program." *Id.* But Plaintiffs have not done so — and "their allegations," "their evidence," and "their requested relief" make that clear. *Id.*

ECF No. 38 at 10. Plaintiffs' amended complaint maintains this allegation and merely *adds* others. *See* ECF No. 43 at 28 ("A key goal . . . of the Defendants' course of conduct as described herein, including their Economic Support Funds awards *and contributions to the United Nations Relief Works Agency* for Gaza and the West Bank, is to directly benefit the Palestinian Authority.") (emphasis added). Because Relief Works Agency funding decisions — like Economic Support Funds decisions — are specific and discrete agency actions, this Court sees no reason to treat Plaintiffs' additional claim differently than their first.

**CONCLUSION**

Defendants' Motion is **DENIED**.

**SO ORDERED**.

June 28, 2024

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE