IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

RONNY L. JACKSON, *et al.*,

    Plaintiffs,

v.                                                    2:22-CV-241-Z

JOSEPH R. BIDEN, JR., *et al.*,

    Defendants.

**ORDER**

Before the Court is Plaintiffs' Motion for Partial Summary Judgment ("Motion") (ECF No. 69), filed September 30, 2024. The Court **ORDERS** the parties to brief the following issues **on or before February 22, 2025**. The briefs **shall not exceed 30 pages** and shall be compliant with the Northern District of Texas's existing formatting rules at Local Rule 7.2.

1. In *Shrimpers and Fishermen of RGV v. Texas Commission on Environmental Quality*, the Fifth Circuit held that it "does not recognize" standing based on an "increased risk that equally affects the general public." Even if the alleged increased-risk harms "are particularized, they also must be actual or imminent." But "[i]ncreased-risk claims — even when they are particularized — often cannot satisfy the 'actual or imminent' requirement." 968 F.3d 419, 424 (5th Cir. 2020).

    QUESTION:

    Does this Fifth Circuit jurisprudence *bar* the injury alleged here — and if not, how does the claimed "increased risk" satisfy the "actual" or "imminence" requirements of *Shrimpers* and similar cases?

2. Aesthetic injury is often asserted in environmental and recreational cases. *See, e.g., TransUnion LLC v. Ramirez*, 594 U.S. 413, 442, 458–59 (2021) (Thomas, J.,

dissenting) (highlighting the inconsistent "picking and choosing" of when aesthetic injury applies); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (finding aesthetic injury when the "recreational values of the area will be lessened"); *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) (holding injury element met if the harm "affects the recreational . . . interests of the plaintiff"); *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 117 F.4th 336, 340, 341–42 (5th Cir. 2024) (Ho, J., concurring); *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 256, 258–60 (5th Cir. 2023) (Ho, J., concurring in part and dissenting in part) (citing cases).

QUESTION:

Do Plaintiffs adequately plead or prove an "aesthetic" injury sufficient to survive summary judgment on standing?

3. Congress enacted and Article III courts routinely enforce terror-finance laws based on a *displacement* thesis that money is fungible — *i.e.*, funds delivered to a terror organization, even for putatively peaceful purposes, *displace* funds then used for terrorism. *See, e.g.*, *Holder v. Humanitarian L. Project*, 561 U.S. 1, 29–31 (2010); *United States v. Holy Land Found. for Relief and Dev.*, No. 3:04-CR-240, 2007 WL 1498813, at *2 (N.D. Tex. May 23, 2007). However, in these cases, the statute prohibits funds flowing to the foreign terrorist organization itself not to other parties. Additionally, the "material support" standard of 18 U.S.C. Section 2339B(a)(1) and 18 U.S.C. Section 2339A(b)(1) differs from the "direct benefit" standard of the Taylor Force Act ("TFA"). *See also* 18 U.S.C. § 2339C(a)(1) (barring funds that "directly or indirectly" aid terror if a mens rea element is met).

QUESTIONS:

What is the limiting principle for extending the "displacement" thesis to the TFA generally and the "direct benefit" terminology specifically?

Using examples, how could funds flow to West Bank or Gaza-based organizations but *not* trigger the "displacement" thesis of "direct benefit" TFA liability?

4. Please explain why the Secretary of State's failure to certify the factors listed at 22 U.S.C. Section 2378c-1(a)(1)(A)–(D) is or is not dispositive at this summary judgment phase.

QUESTIONS:

Is the Secretary of State certification a condition-precedent for all funds, whether deemed "direct" or "indirect"?

Why would Congress require certification by the Secretary of State if funds can be provided simply through reinterpreting the term "directly"?

5. Plaintiffs aver that the "activities" listed in Appendices 4A–4K at ECF No. 69-2 constitute a "direct benefit" to the Palestinian Authority pursuant to the "displacement" thesis.

QUESTIONS:

Do the particular facts of each "activity" raise material issues of fact for purposes of summary judgment?

For example, how do the following "activities" directly benefit the Palestinian Authority such that the Palestinian Authority would pay similar replacement funds were these example disbursements held unlawful?

- Activity 229169: $71,844 "to advance gender equity, equality and empowerment of women and girls."

- Activity 230656: $1,207,000 to the "Middle East Binational Psychotherapy School" to aid "child and adolescent psychotherapy and psychoanalysis."

- Activity 221718: $11,900,000 to aid family planning, reproductive health care, and maternal/newborn health services.

- Activity 230777: Collectively $11,491,024 to "leverage womens['] potential to create ripple effects that shift gender-based power relations within the Palestinian community."

- Activity 225951: Collectively $27,800,000 for "[p]ositive youth engagement."

- Activity 226408: Collectively $15,000,000 to "empower Palestinian citizens and civil society actors to hold public institutions accountable."

6. On January 20, 2025, President Trump signed an Executive Order titled, "Reevaluating and Realigning United States Foreign Aid." This Executive Order requires agency officials to "immediately pause new obligations and disbursements of development assistance funds to foreign countries and implementing non-governmental organizations, international organizations, and contractors pending reviews of such programs for . . . consistency with United States foreign policy." Section 3(a). Such aid is barred until it can be determined to be compliant "with the foreign policy of the President of the United States." Section 2.

QUESTION:

Does this Executive Order apply to any of the funds at issue here?

If so, does this Executive Order legally or prudentially affect the further disposition of this case?

**SO ORDERED.**

January 22, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

4